**Sidney ABBOTT, et al., Plaintiffs, Appellees,**

v.

**Randon BRAGDON, D.M.D., Defendant, Appellant.**

No. 96–1643.

United States Court of Appeals, First Circuit.

Reheard Dec. 9, 1998.

Dec. 29, 1998.

John W. McCarthy, with whom Brent A. Singer and Rudman & Winchell, LLC, Bangor, ME, were on brief, for defendant.

Stephen C. Whiting and the Whiting Law Firm, P.A., Portland, ME, on brief for Cary Savitch, M.D., amicus curiae.

Scott Somerville on brief, for Dentists for Preservation of Professional Judgment, amicus curiae.

Robert J. Masini and Diver, Grach, Quade & Masini, Waukegan, IL, on brief for American Association of Forensic Dentists, amicus curiae.

Richard L. Hill, Lance N. Long, Hill, Johnson & Schmutz, P.C., on brief for Clinical Research Associates, amicus curiae.

Bennett H. Klein, with whom Gay and Lesbian Advocates & Defenders, David G. Webbert, Johnson & Webbert, LLP, Augusta, ME, Wendy E. Parmet, Boston, MA, were on brief, for plaintiff Sidney Abbott.

John E. Carnes, Commission Counsel, on consolidated brief for intervenor-plaintiff Maine Human Rights Commission.

Thomas E. Chandler, Attorney, U.S. Dept. of Justice, Washington, DC, with whom Bill Lann Lee, Acting Assistant Attorney General, and Jessica Dunsay Silver, Washington, DC, were on brief, for United States of America, amicus curiae.

Peter M. Sfikas, Chicago, IL, Mark S. Rubin, Kathleen Todd, Jill A. Wolowitz, Scott M. Mendel, Chicago, IL, Bell, Boyd & Lloyd and Patrick J. Quinlan, Providence, RI, on brief for American Dental Ass'n, amicus curiae.

Before SELYA, Circuit Judge, CYR, Senior Circuit Judge, and STAHL, Circuit Judge.

SELYA, Circuit Judge.

This case involves a claim of disability-based discrimination brought by an asymptomatic HIV-positive individual, Sidney Abbott, against Randon Bragdon, a dentist who refused to fill Ms. Abbott's cavity in his office. The district court found Ms. Abbott's case compelling and granted summary judgment in her favor. *See Abbott v. Bragdon,* 912 F.Supp. 580 (D.Me.1995) (*Abbott I* ). We affirmed, albeit on somewhat different reasoning. *See Abbott v. Bragdon,* 107 F.3d 934 (1st Cir.1997) (*Abbott II* ). The Supreme Court affirmed our decision in substantial part, but remanded with instructions that we reexamine several pieces of evidence. *See Bragdon v. Abbott,* — U.S. —, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (*Abbott III* ). We ordered supplemental briefing, entertained a new round of oral argument, and now reaffirm the district court's entry of summary judgment.

## I

We limned the pertinent facts in our earlier opinion, *see Abbott II,* 107 F.3d at 937–38, and it would be pleonastic to rehearse them here. To lend context, it suffices to remind the reader that Ms. Abbott, who was infected with the Human Immunodeficiency Virus (HIV), went to Dr. Bragdon's Bangor, Maine office for a dental appointment in September 1994; that she was then in the asymptomatic phase of the disease and so informed the dentist; and that, after Dr. Bragdon discovered a cavity, he refused to fill it in his office. Ms. Abbott sued, claiming violations of the Americans With Disabilities Act (the ADA), 42 U.S.C. § 12182 (1994), and the Maine Human Rights Act, 5 Me.Rev.Stat. Ann. tit. 5, § 4592 (West Supp.1998).[1]

The earlier phases of this litigation established that asymptomatic HIV constitutes a disability under the ADA. *See Abbott III,* — U.S. at —, 118 S.Ct. at 2207 (aff'g *Abbott II,* 107 F.3d at 942). The sole remaining question is whether performance of the cavity-filling procedure posed a "direct threat" to others and thereby came within an exception

to the ADA's broad prohibition against discrimination. *See Abbott II,* 107 F.3d at 943; *see also* 42 U.S.C. § 12182(b)(3) (stating the exception and defining a direct threat under the ADA as "a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services").

In the earlier appeal, our rejection of Dr. Bragdon's direct threat defense relied in part on our reading of (i) the 1993 Dentistry Guidelines (the Guidelines) formulated by the Centers for Disease Control (CDC), and (ii) the Policy on AIDS, HIV Infection and the Practice of Dentistry (the Policy) propounded by the American Dental Association (the Association). *See Abbott II,* 107 F.3d at 945–46. Each of these documents indicated to us that the use of so-called "universal precautions" would render the risk of performing the cavity-filling procedure in a dental office insignificant. *See id.* We also noted the absence of a trialworthy showing by Dr. Bragdon as to any direct threat. *See id.* at 946–48. The Supreme Court remanded to permit a reevaluation of the evidence on this issue, and, in particular, a reexamination of the Guidelines and the Policy. *See Abbott III,* 118 S.Ct. at 2211–13. In doing so, the Court took pains to explain that its disposition did not debar us from again reaching the same result. *See id.* at 2213.

## II

In compliance with the Court's directive, we have reexamined the evidence to determine whether summary judgment was warranted. In order to reverse our course, we would have to find, contrary to our original intuition, either that (i) Ms. Abbott did not merit judgment as a matter of law even in the absence of disputed facts, or (ii) that Dr. Bragdon had submitted sufficient evidence to create a genuine issue of material fact as to his direct threat defense. In our reexamination, we apply conventional summary judgment jurisprudence, drawing all reasonable

---

1. Throughout this litigation, the asserted violations of the Maine statute have been treated as following the ADA analysis precisely. *See Abbott* *II,* 107 F.3d at 937 n. 1. Accordingly, we need not address the Maine statute further.

factual inferences in favor of Dr. Bragdon (as the party opposing *brevis* disposition). *See Abbott II,* 107 F.3d at 938 (citing *Smith v. F.W. Morse & Co.,* 76 F.3d 413, 428 (1st Cir.1996)). Despite the leniency of this approach, we do not indulge "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

## A. *Ms. Abbott's Evidence.*

The Supreme Court raised questions regarding whether the Guidelines, which state that use of the universal precautions therein described "should reduce the risk of disease transmission in the dental environment," necessarily imply that the reduction of risk would be to a level below that required to show direct threat. *Abbott III,* 118 S.Ct. at 2211 (quoting Guidelines). We have reconsidered this point.

The CDC did not write the 1993 Guidelines in a vacuum, but, rather, updated earlier versions issued in 1986 and 1987, respectively. The 1986 text calls the universal precautions "effective for preventing hepatitis B, acquired immunodeficiency syndrome, and other infectious diseases caused by bloodborne viruses." The 1987 edition explains that use of the universal precautions eliminates the need for additional precautions that the CDC formerly had advocated for handling blood and other bodily fluids known or suspected to be infected with bloodborne pathogens. Neither the parties nor any of the amici have suggested that the 1993 rewrite was intended to retreat from these earlier risk assessments, and we find no support for such a position in the Guidelines' text. Thus, we have again determined that the Guidelines are competent evidence that public health authorities considered treatment of the kind that Ms. Abbott required to be safe, if undertaken using universal precautions.

Second, the Court questioned the appropriate weight to accord the Policy, expressing concern that the Policy might be based in whole or in part on the Association's view of dentists' ethical obligations, rather than on a pure scientific assessment. *See Abbott III,* 118 S.Ct. at 2211–12. The supplemental briefing that we requested yielded a cornucopia of information regarding the process by which the Policy was assembled. We briefly recount the undisputed facts.

The Association formulates scientific and ethical policies by separate procedures, drawing on different member groups and different staff complements. The Association's Council on Scientific Affairs, comprised of 17 dentists (most of whom hold advanced dentistry degrees), together with a staff of over 20 professional experts and consultants, drafted the Policy at issue here. By contrast, ethical policies are drafted by the Council on Ethics, a wholly separate body. Although the Association's House of Delegates must approve policies drafted by either council, we think that the origins of the Policy satisfy any doubts regarding its scientific foundation.

For these reasons, we are confident that we appropriately relied on the Guidelines and the Policy. Moreover, as the Supreme Court acknowledged, *see id.* at 2212, these two pieces of evidence represent only a fraction of the proof advanced to support Ms. Abbott's motion. For example, she proffered the opinions of several prominent experts to the effect that, in 1994, the cavity-filling procedure could have been performed safely in a private dental office, as well as proof that no public health authority theretofore had issued warnings to health care providers disfavoring this type of treatment for asymptomatic HIV-positive patients. These materials, in and of themselves, likely suffice to prove Ms. Abbott's point. Thus, we again conclude, after due reevaluation, that Ms. Abbott served a properly documented motion for summary judgment.

## B. *Dr. Bragdon's Evidence.*

We next reconsider whether Dr. Bragdon offered sufficient proof of direct threat to create a genuine issue of material fact and thus avoid the entry of summary judgment. In *Abbott II,* we canvassed eight items of evidence adduced by Dr. Bragdon in an effort to demonstrate a genuine issue of material fact. *See Abbott II,* 107 F.3d at 946–48. The Supreme Court suggested that one such piece of evidence—the seven cases that the CDC considered "possible" HIV patient-to-

dental worker transmissions—should be re-examined. *See Abbott III*, 118 S.Ct. at 2212.

The Court's concern revolved around how the word "possible" was understood in this context at the relevant time. To frame the issue, the Court noted that the CDC marks an HIV case as a "possible" occupational transmission if a stricken worker, who had no other demonstrated opportunity for infection, simply failed to present himself for testing after being exposed to the virus at work. *See id.* The Court speculated that if this definition of "possible" was not available in September 1994, the existence of seven "possible" cases "might have provided some, albeit not necessarily sufficient, support for [Dr. Bragdon's] position." *Id.* In other words, if a dentist knew of seven "possible" occupational transmissions to dental workers without understanding that "possible" meant no more than that the CDC could not determine whether workers were infected occupationally, he might reasonably regard the risk of treating an HIV-infected patient to be significant.

Upon reexamination of the record, we find that the CDC's definition of the word "possible," as used here, had been made public during the relevant period. The record contains two scientific articles published before Ms. Abbott entered Dr. Bragdon's office which explained this definition. *See* Louise J. Short & David M. Bell, *Risk of Occupational Infection With BloodBorne Pathogens in Operating and Delivery Room Settings*, 21 Am. J. Infection Control 343, 345 (1993); John A. Molinari, *HIV, Health Care Workers and Patients: How to Ensure Safety in the Dental Office*, 124 J. Am. Dental Ass'n 51, 51–52 (1993). Since an objective standard pertains here, *see Abbott III*, 118 S.Ct. at 2211; *Abbott II*, 107 F.3d at 944, the existence of the list of seven "possible" cases does not create a genuine issue of material fact as to direct threat.

In his supplemental briefing and oral argument, Dr. Bragdon has drawn our attention again to the CDC's report of 42 documented cases of occupational transmission of HIV to health-care workers (none of whom were dental workers). He repeats his argument that, because dental workers are subject to dangers similar to those faced by other health-care workers, these cases can be extrapolated to create an issue of fact as to the degree of risk to dental workers in September 1994. We previously held that this evidence was insufficient without a documented showing that the risks to dentists and other health-care workers are comparable, *see Abbott II*, 107 F.3d at 947, and the appellant offers us no cogent reason to change our view. The Supreme Court did not question our position on this front, and Dr. Bragdon points to no record support that we previously might have overlooked.

Our assessment of Dr. Bragdon's, and his amici's, other reprised arguments similarly remains unchanged. Each piece of evidence to which they direct us is still "too speculative or too tangential (or, in some instances, both) to create a genuine issue of material fact." *Id.* at 948.

## III

We need go no further. Upon reflection, we again find that Dr. Bragdon did not submit evidence to the district court demonstrating a genuine issue of material fact on the direct threat issue. Absent such a showing, the district court appropriately entered summary judgment in favor of Ms. Abbott. In espousing that view, we emphasize the case-specific nature of our determination. Our disposition is confined to the facts of record here (as they were presented in the *nisi prius* court). The state of scientific knowledge concerning this disease is evolving, and we caution future courts to consider carefully whether future litigants have been able, through scientific advances, more complete research, or special circumstances, to present facts and arguments warranting a different decision.

*Affirmed.*