William **BURNETT**, Plaintiff,

v.

**PUERTO RICO PORTS AUTHORITY,**
**Defendant.**

No. CIV 01–2598(JAC–SEC).

United States District Court,
D. Puerto Rico.

March 3, 2004.

Nicolás Nogueras Cartagena, San Juan, PR, for Plaintiff.

Pedro E. Ruiz Meléndez, Ruiz & Habib, LLP, San Juan, PR, for Defendant.

## OPINION AND ORDER

CASTELLANOS, United States Magistrate Judge.

Defendant filed a motion for summary judgment on January 8, 2004, with corresponding attachments and translations (Dockets No. 34, 40). Plaintiff filed his opposition on February 5, 2004 (Docket No. 42). Defendant's reply to plaintiff's opposition was submitted on February 12, 2004 (Docket No. 44).

Succinctly, this action entails a claim under Americans with Disabilities Act[1] filed by above plaintiff, a vessel captain working for the defendant, Puerto Rico Ports Authority (hereinafter "PRPA"), who holds a valid license from the United States Coast Guard to operate vessels, against defendant employer, the Puerto Rico Port Authority, indicating he was subject of discrimination and retaliation as a result of an alleged disability. Defen-

---

1. 42 U.S.C. § 12102(2).

dant PRPA has claimed a supervisor, Mr. José Negrón, made a preliminary assessment to temporarily remove plaintiff from his duties as a passenger ferryboat captain. His job functions at the time were modified for security reasons after a medical certificate in plaintiff's record stated plaintiff was disabled and after subsequent requests by the defendant for medical information to inquire into the severity of his condition were denied. Plaintiff has continued working with defendant, has suffered no economic loss, and has not been demoted or discharged.

Defendant PRPA submitted that plaintiff has not established the requisites for a *prima facie* case under the Americans with Disabilities Act (hereinafter "ADA") for which summary judgment is prayed. It also submits that the employer's initial action to limit plaintiff's activities to be as a captain to protect the safety of passengers because of the emotional condition certified by plaintiff's own physician did not entail that it viewed plaintiff as an individual with an impairment that limits a major life activity.

Defendant submits as uncontested material facts that plaintiff works as a passenger ferry captain for defendant, holding a license to operate vessels, which allows him to transport commuter passengers to and from Old San Juan and the Cataño terminals, in the northern part of the island of Puerto Rico, crossing a major high traffic commercial port. Plaintiff lived in the town of Mayaguez, at the farther West coast of the island of Puerto Rico, and he decided to continue his university and graduate studies, pursuing said studies in the west and south coast educational facilities, while he was working for the defendant employer. He studied his bachelor's degree in the Catholic University of Puerto Rico in Ponce and his law degree in 1996 at the Eugenio María de Hostos School of Law in Mayaguez, Puerto Rico.

Plaintiff has an emotional condition, diagnosed as bipolar disorder, which is fully under control with medication. His physician has considered he is competent to perform his duties as a captain with the use of medication. After he was hospitalized for major depression in 1995, and defendant having granted him a medical leave, plaintiff returned to his regular functions. Defendant was aware of plaintiff's emotional condition while he was working and studying from 1995 through 2000.[2]

Plaintiff's deposition testimony indicates he does not consider himself to be disabled or to have a disability that impedes performance of his job as a captain nor requested in his application as a law student for any need of accommodation because of disability. The deposition testimony also shows that plaintiff indicated having no proof that the employer PRPA perceived him as being disabled[3] nor that prior to his supervisor, Mr. Negrón, reassigning him because of the medical certificate he submitted, the employer PRPA had taken any action because of a perceived disability.

---

2. Plaintiff commenced work with defendant on February 1, 1991, as captain of vessels. He had shifts of seven (7) hours and was in charge of two (2) crew members, and of a maximum of one hundred and forty nine (149) passengers in each ferry ride.

3. Q ... before being removed from your duties, what evidence do you have, what proof do you have or what experience did you have or how did you think that the Authority was treating you as a person, or perceived that you were a person with a disability?
A I do not have evidence of that.
Q So, you don't know if the, if the, the Ports Authority, prior to removing you from your duties, had, had perceived you as a person with a disability?
A No, it would be speculative (Burnett's depo. p. 86)

From 1996 through 2001 plaintiff was dedicated, with defendant's knowledge, to his work in San Juan, and to his study of law through his commute to Mayaguez, where he also held his residence.[4] On April 13, 2000, plaintiff provided a note from his doctor after being absent from work which stated he had been absent "because of labor pressures that exacerbated his emotional condition" and that he was able to "return to work on his next shift, on April 16, 2000."

On April of 2000, plaintiff's immediate supervisor, Mr. José Negrón, on account of said medical certificate, assigned him to auxiliary functions on the dock pending a medical evaluation. Defendant PRPA was apprised by Mr. Negrón of plaintiff's medical certificate and the diagnosis of an emotional condition on May 5, 2000. Plaintiff was temporarily reassigned in the dock to perform preventive maintenance to vessels, operating vessels, and occasionally being a captain of empty vessels in lieu of his regular schedule as captain of passenger ferryboats.

Plaintiff wrote a letter on June 1, 2000, in relation to his supervisor's request for a medical evaluation as to his condition, refusing to submit to same on grounds that the labor agreement between the Union and defendant employer would consider such a petition belated.

On September 19, 2002, plaintiff's physician, Dr. Carlos Avilés, submitted another medical certificate that was delivered to PRPA clarifying plaintiff's ability to work and execute his functions as a captain, except in situations where, due to labor pressures, he was recommended rest. Thereafter, the Executive Director of PRPA reviewed plaintiff's situation and determined that plaintiff should resume his regular duties as a captain of a passengers vessel.[5]

Plaintiff's opposition to summary judgment addresses for the most part the provisions under ADA that he deems applicable to his case insofar that defendant PRPA's acts show defendant have regarded him as a disabled person when he was temporarily removed from his duties as a captain because of the medical certificate he submitted in April of 2000. Plaintiff also submits that his co-workers would make reference to his mental condition, by calling him names such as "Captain Mepsi" and "crazy captain" and he complained to the Union about this situation.

The Americans With Disabilities Act prohibits covered employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

 "Disability" therein is defined as: "a) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; b) a record of such an impairment; or c) being regarded as having such an impairment."

---

4. Letter of Dr. Carlos A. Avilés indicated his personal activities consisted of road traveling 980 miles per week, attending his last semester of law school, and working as a master in the Puerto Rico Ports Authority. Plaintiff's deposition testimony is consonant with the road travel routine required to attend both work and post-graduate studies.

5. Plaintiff indicated that Dr. Aviles' letter of February 22, 2001, attesting both as to his medical condition and as to his competency to exercise duties as a master that was addressed to the Coast Guard, was never provided to his employer PRPA. The employer, PRPA, was solely provided with the certificate of April 13, 2000, above described, and subsequently with a clarifying certificate dated September 19, 2002.

42 U.S.C. § 12102(2). To sustain a claim under ADA, plaintiff must be able to demonstrate that his impairment substantially limits one or more of his major life activities. *Sullivan v. Neiman Marcus Group, Inc.* 358 F.3d 110, 2004 WL 259069, (1st Cir.2004) *citing* also *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002); *Lessard v. Osram Sylvania, Inc.,* 175 F.3d 193, 197 (1st Cir.1999) (*holding* that "Under the ADA, not all impairments lead to protection. Only those impairments which substantially limit a major life activity do so.") (citation omitted). Major life activities are those activities that are of "central importance to daily life." *Toyota Motor Mfg.,* 534 U.S. at 197, 122 S.Ct. 681. These include, *inter alia,* basic actions such as seeing, hearing, speaking, breathing, performing manual tasks, lifting, and reaching. 29 C.F.R. Pt. 1630, App. (2004). *Sullivan v. Neiman Marcus Group, Inc, supra.*

■■■■■ Additionally, to establish such a *prima facie* case under ADA plaintiff must show that either he suffers from a disability or was regarded as person with disability. "Regard as" would entail that a covered entity mistakenly believes that a person has a physical or mental impairment that substantially limits one or more major life activities; or a covered entity mistakenly believes than an actual, non-limiting impairment substantially limits one or more major life activities. *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). If the plaintiff demonstrates a *prima-facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its challenged actions. *Texas*

*Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *Rivera–Rodríguez v. Frito Lay Snacks Caribbean,* 265 F.3d 15, 26, (1st Cir.2001).

The determination of whether a plaintiff has a disability within the meaning of the ADA must be made on a case-by-case basis. Americans with Disabilities Act of 1990, § 3(2), 42 U.S.C.A. § 12102(2); 29 C.F.R. § 1630.2(g). *Calero–Cerezo v. U.S. Dept. of Justice,* 355 F.3d 6 (1st Cir.2004).

Plaintiff may utilize three methods to establish a claim of disability. *See Jacques v. Clean–Up Group, Inc.,* 96 F.3d 506, 511 (1st Cir.1996); *Bailey v. Georgia–Pacific Corporation,* 306 F.3d 1162, 1167 (1st Cir. 2002). Of those plaintiff has, under the circumstantial or preponderance of evidence approach, two methods of proving his ADA claim; the statutory framework method or the *McDonnell Douglas* burden-shifting framework. *Alamo Rodríguez v. Pfizer Pharmaceuticals, Inc.* 286 F.Supp.2d 144, 153 (D.P.R.2003). *See also* John F. Wagner, *Ann. What Constitutes Substantial Limitation on Major Life Activity of Working for Purposes of Americans with Disabilities Act* (42 U.S.C.A. §§ 12101–12213), 141 A.L.R. Fed. 603.

■■■■ In regard to plaintiff's claims that co-workers made comments on his condition that should be attributed to defendant, plaintiff has no evidence that these alleged comments did not bloom from any key decisionmaker or those in a position to influence the decisionmaker.[6] *Mulero–Rodríguez v. Ponte, Inc.,* 98 F.3d 670, 675–76 (1st Cir.1996). Statements made by "one who neither makes nor influences [a] challenged personnel decision are not pro-

---

**6.** A I know they found out that there was a medical certificate for an emotional condition and that's how it came up ... the psychiatric captain started to evolve, mari-trauma and all the other comments along those lines.

Q Who said that to you?
A My co-workers.
Q Were they fellow captains.
A No, co-workers in general, all of them. Mechanics, janitors, seamen, captains.

bative in an employment discrimination case." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 10 (1st Cir.1990). *See Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 55 (1st Cir. 2000); *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 96–97 (1st Cir. 1996).

■ Additionally, even if plaintiff would be deemed to have established a *prima facie* case, the action would not prevail under the burden-shifting parameters of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The employer's non-discriminatory reason to temporarily reassign plaintiff's duties, while the medical condition shown in his medical certificate was clarified, because of the potentiality of danger to ferry passengers and safety of the vessels is *bona-fide*. Plaintiff has not submitted any evidence to indicate the reasons for the action taken were pretextual nor could establish same by linking comments made by co-workers, at an undisclosed and undetermined manner, as the foundation for the employer's actions. Plaintiff has not proffered evidence from which a jury could conclude that defendant's stated reasons for the actions subject of the complaint were in fact a pretext for discrimination.

■ The employer's burden under the ADA of articulating a legitimate, nondiscriminatory reason for its adverse employment decision entails only a burden of production, not a burden of persuasion; the task of proving discrimination remains with the employee's at all times. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq., *Marcano–Rivera v. Pueblo Intern., Inc.*, 232 F.3d 245 (1st Cir.2000).

It is of outmost importance to understand the ADA statutory scheme with its aim of protecting the disabled from discriminatory employment action based on stereotypes and fear. *See* H.R.Rep. No.

101–485, pt. 3, at 45 (1990), reprinted in 1990 U.S.C.C.A.N. 445, 468; *see also Jacques*, 96 F.3d at 511; *E.E.O.C. v. Amego, Inc.*, 110 F.3d 135, 142 (1st Cir.1997). Still, there is an exception for defining a direct threat under the ADA as "a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services". 42 U.S.C. § 12182(b)(3). *See Abbott v. Bragdon*, 163 F.3d 87, 88 (1st Cir.1998) (involving Title III of the ADA) (noting the need to balance the interests of individuals with disabilities against legitimate concerns for public safety).

■ The ADA's direct threat provision stems from the recognition of the importance of prohibiting discrimination against individuals with disabilities while protecting others from significant health and safety risks, resulting, for instance, from a contagious disease. *School Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 287, 107 S.Ct. 1123, 1130–1131, 94 L.Ed.2d 307 (1987). The Highest Court reconciled these objectives by construing the Rehabilitation Act not to require the hiring of a person who posed "a significant risk of communicating an infectious disease to others." *Id.*, at 287, n. 16, 107 S.Ct. at 1131, n. 16. Congress amended the Rehabilitation Act and the Fair Housing Act to incorporate this language. *See* 29 U.S.C. § 706(8)(D) (excluding individuals who "would constitute a direct threat to the health or safety of other individuals"); 42 U.S.C. § 3604(f)(9) (same). Congress later relied on the same language in enacting the Americans with Disabilities Act. See 28 CFR pt. 36, App. B, p. 626 (1997) (ADA's direct threat provision codifies *Arline*). Because few, if any, activities in life are risk free, *Arline* and the ADA do not ask whether a risk exists, but whether it is significant. *Arline, supra,* at 287, and n.

16, 107 S.Ct., at 1131, and n. 16; 42 U.S.C. § 12182(b)(3). *Bragdon v. Abbott,* 524 U.S. 624, 649, 118 S.Ct. 2196, 2210, 141 L.Ed.2d 540 (1998). *See Dudley v. Hannaford Bros. Co.,* 333 F.3d 299, 308 (1st Cir.2003); *Theriault v. Flynn,* 162 F.3d 46, 48–49 (1st Cir.1998).

Plaintiff's argument that defendant's actions show this is a "perceived to be disabled" case, submits no scintilla of proof in support that the acts were motivated by stereotypes about the disabled. See *Calef v. Gillette Co.,* 322 F.3d 75, 87 (1st Cir. 2003). The plaintiff is required to establish that is a genuine issue of material fact. Evidence which is merely colorable or not significantly probative would not be deemed sufficient. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–250, 106 S.Ct. 2505, 2510–2511, 91 L.Ed.2d 202 (1986).

Similar to the case at bar, in *Lessard v. Osram Sylvania, Inc.,* 175 F.3d 193 (1st Cir.1999) an employer did not regard the employee as being substantially limited in the major life activity of working when regarding him unable to perform a particular job and not as being unable to perform a class or broad range of jobs, when worker offered no evidence that employer questioned his ability to work in anything other than a specific job.

■ Likewise, plaintiff herein submits no evidence that he was singled out simply because he was a disabled individual when a concern was raised that his present condition, as certified by his own physician, might reasonably lead to a concern in regard with his safe driving ability of ferry passengers vessels, much more so when seen in the light of the supervisor's obligation to ensure safety on the vessels, passengers, and crew. *Theriault v. Flynn,* 162 F.3d 46, 49 (1st Cir.1998).

The summary judgment standard, under Fed.R.Civ.P.56, provides that the court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. R. 56(c). In *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court held that the party seeking summary judgment bears the initial burden demonstrating that no genuine issue as to a material fact exists. A contested fact is "material" when it has the potential to change the outcome of the case. *Vega–Rodríguez v. Puerto Rico Tel. Co.,* 110 F.3d 174, 178 (1st Cir.1997). There is no genuine issue for trial when the record, taken as a whole, could not lead a trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

To defeat summary judgment, the non-moving party must "present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodríguez,* 23 F.3d 576, 581 (1st Cir.1994). The non-moving party must show that a trial-worthy issue exists and must point to specific facts that demonstrate the existence of an authentic dispute. *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991). "The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

This Magistrate Judge thus rules that on grounds discussed above, defendant's request for summary judgment BE

GRANTED and the complaint be herein DISMISSED as to claims under the Americans with Disabilities Act.

Insofar as state claims plaintiff submitted in the complaint, in 1990 Congress enacted the provisions found in 28 U.S.C. § 1367 granting federal courts "supplemental jurisdiction" or what had formerly been referred to as "pendent jurisdiction" and "ancillary jurisdiction." Pursuant to same, "in any civil action over which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action ... that they form part of the same case and controversy." 28 U.S.C. § 1367 (1993). *See* the Supreme Court's analysis in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

In *Gibbs* a federal court may exercise supplemental jurisdiction over a state claim whenever it is joined with a federal claim and at these two claims "derive from a common nucleus of operative fact" as to which the plaintiff " would ordinarily be expected to try them both in one judicial proceeding." *Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138; *Brown v. Trustees of Boston University,* 891 F.2d 337, 356 (1st Cir. 1989). The statute expressly states that a district court may refuse to exercise this jurisdiction if the state claim "substantially predominates over the claim or claims over which the district court has original jurisdiction" or "the claim raises a novel or complex issue of state law." 28 U.S.C. §§ 1367(c)(1), (c)(2). Still, the decision whether to exercise supplemental jurisdiction is left to the broad discretion of the district court and will be disturbed only upon finding an abuse of discretion. *See Newman v. Burgin,* 930 F.2d 955, 963 (1st Cir.1991); *McCaffrey v. Rex Motor Transportation, Inc.,* 672 F.2d 246, 250 (1st Cir. 1982). *See also Vera–Lozano v. Interna-tional Broadcasting,* 50 F.3d 67, 70–71 (1st Cir.1995).

Thus, this Magistrate Judge declines to exercise pendant jurisdiction upon absence of a federal cause of action. In light of the above discussed, plaintiff's complaint is dismissed.

Judgement to be entered accordingly.

IT IS SO ORDERED.