# United States Court of Appeals

## For the First Circuit

No. 03-1606


JOHN F. SULLIVAN,

Plaintiff, Appellant,

v.

THE NEIMAN MARCUS GROUP, INC.,

Defendant, Appellee.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti Saris, U.S. District Judge]


Before

Lipez, Circuit Judge,
Campbell, Senior Circuit Judge,
and Howard, Circuit Judge.


Andrew Kisseloff with whom Mitchell Notis, Annenberg & Levine
and The Hale and Dorr Legal Services Center of Harvard Law School
were on the brief, for appellant.
John M. Simon with whom Carol Chandler and Stoneman, Chandler
& Miller LLP were on brief, for appellee.


February 13, 2004

**LIPEZ, <u>Circuit Judge</u>**.  This case, which requires us to assess whether an employee's alcoholism constituted a disability under the Americans with Disabilities Act ("ADA"), illustrates the difficulties of invoking work as the major life activity substantially limited by an impairment such as alcoholism.  The case comes to us on an appeal from a summary judgment ruling against the plaintiff.

## I.

We begin our analysis by presenting a brief overview of the relevant facts, which are drawn primarily from the district court opinion, the briefs, and the joint appendix.  In reviewing the entry of summary judgment, we are mindful that we must view the record evidence "in the light most favorable to, and draw[] all reasonable inferences in favor of, the nonmoving party."  <u>Feliciano de la Cruz</u> v. <u>El Conquistador Resort & Country Club</u>, 218 F.3d 1, 5 (1st Cir. 2000).

Plaintiff-Appellant John F. Sullivan has had a history of problems with alcohol.  In the mid 1980s, he enrolled in treatment at the Long Island Shelter Detox Center in Boston.  He joined the Alcoholics Anonymous program in 1988 and has subsequently undergone other forms of treatment.  Still, his problems with alcohol have persisted.

Sullivan also has a long and seemingly successful employment history in the retail sector.  During the mid 1980s, at

approximately the same time that he was dealing with his alcoholism, he was working in the Infant-Toddler Department at Jordan Marsh in Boston. After being laid off from that position when the economy slowed in the late 1980s, he took a series of retail jobs over the next five to seven years. Those positions ranged from selling office supplies and jewelry to planning and stocking the opening of a new health and nutrition store. While he did not stay at any of these jobs for an extended period of time, he did not leave them for disciplinary reasons. Around 1994 Sullivan took a sales job with Brooks Brothers in Boston, where he excelled and was eventually promoted to a low-level management position. However, he resigned that position in July 1998 because he grew unhappy with the work environment and because he wanted to advance his sales career.

Sullivan was hired by Neiman Marcus as a sales associate in its Boston store in March, 1999. By June of that year he had been promoted to Assistant Manager of the store's Gift Gallery, where he was responsible for supervising one employee, Ramon Lora. Sullivan remained in this position until Susan Parker, Neiman Marcus's Human Resources Manager, sent him a letter on September 10, 1999, informing him that he had been terminated effective August 25, 1999.

Neiman Marcus claims that it made the actual decision to terminate Sullivan on August 12, 1999 in response to his behavior

-3-

on the previous day, when he left work to go to lunch with a number of his co-workers at a local Mexican restaurant. Laura Lane, Neiman Marcus's Human Resource Coordinator in Boston, was among the co-workers who attended that lunch, and she later wrote a memorandum to Susan Parker detailing Sullivan's behavior at the bar and after lunch. According to Lane, Sullivan ordered a vodka and cranberry juice with lunch. He did not consume that drink during lunch, but she claimed that he was "acting kind of strange," "was talking more boisterous than normal," "didn't seem himself," and "sounded intoxicated." Sullivan remained in the bar area of the restaurant after his co-workers returned to the store. According to Neiman Marcus, Lane reported these observations to Parker later that afternoon, but by the time the two spoke, Sullivan had called Parker, told her that his father had medical problems, and requested to leave early. Parker granted his request.

Later that same afternoon, Ramon Lora supposedly informed Parker that he was resigning his position because he did not respect Sullivan and could no longer work for a person he did not respect. He said that Sullivan frequently drank at work and was drunk during the day and that Sullivan abused Lora when he drank. Lora also gave this information to Neiman Marcus's Loss Prevention Manager, Paul Karbowski, and said that Sullivan had been drinking vodka out of a soda bottle in the Gift Gallery stock room. Karbowski searched the desk that Sullivan used and found an empty

bottle of Absolut vodka and a bottle of Mountain Dew in one of the drawers. Based on this information, Parker concluded that Sullivan had been drinking during work hours.

Sullivan did not report to work on August 12 or 13 and did not call the store. Parker called Neiman Marcus's corporate headquarters on August 12 and supposedly decided to terminate him on that day. Sullivan called Parker on August 16 and informed her that he had a problem with alcohol and was entering an alcohol rehabilitation program. According to Sullivan, Parker informed him that he could have the time off from work to attend the rehabilitation program, and that he should speak with her when the program ended. After being discharged from the rehabilitation program on August 24, Sullivan contacted Parker by telephone, and she informed him that she needed to talk with him concerning the termination of his employment. Although they agreed to meet the next day, Sullivan did not attend the meeting. Neiman Marcus sent Sullivan a letter on September 10, 1999, informing him that his employment had been terminated on August 25, 1999, for violation of company policies concerning the use of alcohol on the job.

Sullivan filed a complaint with the Equal Employment Opportunity Commission (EEOC) on April 18, 2000 and received a right to sue letter on May 31, 2001. He then filed suit against Neiman Marcus in the United States District Court, alleging that Neiman Marcus failed to make a reasonable accommodation to his

disability or, in the alternative, that it illegally discriminated against him in response to his disability. Neiman Marcus claimed that he had been fired because he had consumed alcohol during the work day in violation of company rules and not because he was an alcoholic. It also claimed that the decision to terminate him had been made before he notified the company that he was entering the rehabilitation program to address an alcohol problem. On this basis, with appropriate supporting documentation, Neiman Marcus sought summary judgment.

In response, submitting his own documentation, Sullivan denied drinking on the job and denied the misconduct attributed to him by co-workers on August 11 during and after the lunch at the Mexican restaurant. For a variety of reasons set forth in the summary judgment record, he insisted that the Neiman Marcus investigation into his misconduct was inadequate. Although he did not dispute that he put the vodka bottle in his desk found by Neiman Marcus's Loss Prevention Manager, Paul Karbowski, he said that his brother borrowed his suit jacket and put the bottle in the inside pocket of the jacket when he was done. Sullivan then put the vodka bottle in the desk but insists that he did not drink the alcohol. More generally, Sullivan claimed that Neiman Marcus did not decide to terminate him for misconduct on August 12. Instead, they decided to terminate him after he informed the company on August 16 that he had to undergo treatment for alcoholism. In his

view, the company made that decision because of its concerns about his alcoholism rather than misconduct on the job.

After reviewing the summary judgment record, the district court granted summary judgment in favor of Neiman Marcus, concluding that "[t]here is no evidence from which a reasonable factfinder could infer that plaintiff was fired for a disability (i.e., alcoholism) rather than his employer's rational belief, even if mistaken, . . . that he engaged in on-the-job possession of alcohol and intoxication in violation of company policy." This appeal followed.

## II.

Although Neiman Marcus defends the ground for the district court decision on appeal, it focuses initially on a different ground for affirmance--the absence of evidence in the summary judgment record that Sullivan was disabled within the meaning of the ADA.[1] We may affirm the "district court's grant of summary judgment on any basis that is manifest in the record." John G. Danielson, Inc. v. Winchester-Conant Props., Inc., 322 F.3d 26, 37 (1st Cir. 2003). "Further, it is well settled that [t]he mere existence of a scintilla of evidence is insufficient to defeat

---

[1]Unfortunately, Sullivan did not address this issue in his opening appellate brief and did not file a reply brief. He also failed to raise his "failure to accommodate" claim on appeal; therefore, we consider that issue to be waived. See Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d 302, 309 (1st Cir. 2002).

a properly supported motion for summary judgment. Consequently, a party opposing summary judgment must present definite, competent evidence to rebut the motion." Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13, 18 (1st Cir. 2000) (internal quotations and citations omitted). We choose to focus on the disability issue, which is largely unencumbered by the dispute over historical facts in the summary judgment record. In so doing, we do not necessarily mean to express disagreement with the district court's alternative rationale.

Title I of the Americans With Disabilities Act (codified at 42 U.S.C. § 12112) prohibits covered employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines "disability" as: "a) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; b) a record of such an impairment; or c) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Sullivan did not allege that he had a record of disability as defined under the ADA; therefore, we will only consider whether the summary judgment record established that he

had an actual impairment or whether the company regarded him as being impaired.

## A. Actual Impairment

As we have previously held, "[t]here is no question that alcoholism is an impairment . . . under the ADA." Bailey v. Georgia-Pacific Corp., 306 F.3d 1162, 1167 (1st Cir. 2002). However, mere impairment without more is insufficient to establish that a claimant is disabled under the ADA. In order to have a viable claim, a plaintiff must demonstrate that his impairment substantially limits one or more of his major life activities. Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 195, (2002); Lessard v. Osram Sylvania, Inc., 175 F.3d 193, 197 (1st Cir. 1999) ("Under the ADA, not all impairments lead to protection. Only those impairments which substantially limit a major life activity do so.") (citation omitted). Major life activities are those activities that are of "central importance to daily life." Toyota Motor Mfg., 534 U.S. at 197. These include, inter alia, basic actions such as seeing, hearing, speaking, breathing, performing manual tasks, lifting, and reaching. 29 C.F.R. Pt. 1630, App. (2004).

Sullivan claims that work was the major life activity that was substantially impaired by his alcoholism. We will, as we have done in the past, assume without deciding that work may constitute a major life activity. See, e.g., Whitlock v. Mac-Gray,

Inc., 345 F.3d 44, 46 n.1 (1st Cir. 2003); Bailey, 306 F.3d at 1168 n.5; Carroll v. Xerox Corp., 294 F.3d 231, 239 n.7 (1st Cir. 2002); Gelabert-Ladenheim v. American Airlines, Inc., 252 F.3d 54, 58 (1st Cir. 2001).  We take this approach because the Supreme Court has not yet accepted work as a major life activity within the meaning of the ADA.  See, e.g., Sutton v. United Air Lines, Inc., 527 U.S. 471, 492 (1999) ("[a]ssuming without deciding that working is a major life activity" because both parties accepted that it was and because that determination was not essential to the case).  Indeed, the Supreme Court has observed that there are "conceptual difficulties inherent in the argument that working could be a major life activity" under the ADA.  Toyota Motor Mfg., 534 U.S. at 200.[2] In our view, one of these difficulties poses a significant Catch-22 dilemma for an ADA claimant such as Sullivan.  To be eligible for ADA protection, he must demonstrate that he is a "qualified individual" for the position at issue. See 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual with a disability. . . .") (emphasis added); see generally id. at § 12111(8) (defining "qualified individual with a

_____

[2]In Toyota Motor Mfg., the Court did not elaborate on these difficulties, but it referenced its Sutton opinion in which it observed that "it seems 'to argue in a circle to say that if one is excluded . . . by reason of [an impairment, from working with others] . . . then that exclusion constitutes an impairment, when the question you're asking is, whether the exclusion itself is by reason of handicap.'" Sutton, 527 U.S. at 492 (quoting Tr. of Oral Arg. in School Bd. v. Arline, O.T. 1986, No. 85-1277, at 15 (argument of Solicitor General)).

disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires"). By demonstrating that his ability to work is substantially impaired, he may demonstrate that he is unqualified for the job and, therefore, excluded from ADA protection. If he does not introduce such evidence, however, he may fail to show that he was substantially impaired.[3]

An employee who claims that alcoholism impairs his ability to work faces this conundrum in statutory form. The ADA explicitly allows an employer to "hold an employee who . . . is an alcoholic to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the . . . alcoholism of such employee." 42 U.S.C. § 12114(c). This statutory provision means that an employee who tries to use deficiencies in his job performance as evidence that alcoholism substantially impairs his ability to work is likely to establish

---

[3]We recently made the same point in Calero-Cerezo v. United States Dep't Justice, No. 02-2643, 2004 WL 67928, at *13 (1st Cir. Jan. 14, 2004); see also Steven S. Locke, The Incredible Shrinking Protected Class: Redefining the Scope of Disability under the Americans with Disabilities Act, 68 U. Colo. L. Rev. 107, 127 (1997) ("Employers are more frequently using this dilemma to their advantage, arguing both that a plaintiff is not disabled, and that she is so disabled that she is not qualified.").

the unhelpful proposition, for ADA coverage, that he cannot meet the legitimate requirements of the job.

Even if Sullivan could navigate these conceptual hurdles, he still must make a "weighty showing" to prove that his impairment substantially interferes with his ability to work. Bailey, 306 F.3d at 1168. "Proof that an individual cannot 'perform a single, particular job does not constitute [proof of] a substantial limitation in the major life activity of working.'" Id. (quoting Lebrón-Torres v. Whitehall Labs., 251 F.3d 236, 240 (1st Cir. 2001). Instead, the claimant must demonstrate that he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." Bailey, 306 F.3d at 1168 (quoting 29 C.F.R. § 1630.2(j)(3)(i)) (emphasis in original). This demonstration generally requires the introduction of evidence on the "accessible geographic area, the numbers and types of jobs in the area foreclosed due to the impairment, and the types of training, skills, and abilities required by the jobs." Bailey, 306 F.3d at 1168 (citing 29 C.F.R. § 1630.2(j)(3)(ii)(A)-(C)). Accordingly, if "jobs utilizing [his] skills (but perhaps not his . . . unique talents) are available, [he] is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, [he] is not precluded from a broad range of jobs."

-12-

Sutton, 527 U.S. at 492. Finally, he must also show that he is not just temporarily precluded from those jobs; he must show that the impact of his impairment is permanent or at least that it is long term. Toyota Motor Mfg., 534 U.S. at 198 (citing 29 CFR §§ 1630.2(j)(2)(ii)-(iii)).

Sullivan has not come close to presenting such evidence. Indeed, perhaps aware of the danger that his evidence might establish that he was unqualified for the job at Neiman Marcus, he presented virtually no evidence demonstrating that his alcoholism had a deleterious effect on his ability to work at Neiman Marcus or elsewhere. In fact, Sullivan presented significant evidence demonstrating that his alcoholism has not interfered with his ability to work. In response to a deposition question, he insisted that "I was doing a satisfactory job [at Neiman Marcus] before I went into treatment. I felt I would be a much better employee after going to treatment." When he was asked to elaborate, Sullivan added: "I believe that I gained some spiritual growth while I was in treatment and I was going to take that to help perform my job better." When asked whether his "alcoholism limit[s] [him] in any way from doing just things in life generally," Sullivan replied that "if it was untreated . . . it could begin to affect my professional life" and that "I wouldn't be at my peak performance levels."

-13-

Sullivan also testified that he worked successfully at other jobs both before and after his time at Neiman Marcus. At Brooks Brothers, he was one of the top two sellers in Boston and among the top thirty-eight in the nation. After he left Neiman Marcus, he worked thirty hours per week as a bus driver and occasionally as a server with a catering company. He further testified at his deposition that he expected his bus job to turn into a full-time position. Considering all of this evidence in the light most favorable to Sullivan, there is simply no showing here that his alcoholism has substantially interfered with his ability to work.

**B. Regarded As Being Impaired**

We also cannot conclude that Neiman Marcus regarded Sullivan as being substantially impaired within the meaning of the ADA. By protecting employees from discrimination based on their employer's mistaken impression that they are disabled, Congress recognized that "'society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment.'" Sutton, 527 U.S. at 489 (quoting School Bd. of Nassau Cty. v. Arline, 480 U.S. 273, 284 (1987)). See also Sutton, 527 U.S. at 484-90 (stating that the "purpose of the regarded as prong is to cover individuals 'rejected from a job because of the myths, fears and stereotypes associated with disabilities'") (quoting 29 C.F.R. § 1630, App. & §

-14-

1630.2(l)). Accordingly, there are two ways in which an employee can demonstrate that his employer regarded him as disabled:

> (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or
> (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.

Sutton, 527 U.S. at 489.

Alcoholics can be fully-functioning and productive employees who do not experience any substantial limitation in their ability to work. Employers who harbor misperceptions and prejudice about alcoholics may not recognize the abilities of these employees and may regard them as being substantially impaired even though they are not. Theoretically, an employee subject to this mistaken belief could qualify as disabled under the "regarded as" prong of the ADA, as elaborated in Sutton, without confronting the Catch-22 dilemma posed by proof of actual impairment, which runs the risk of establishing that the employee is unqualified for the job. That is, Sullivan could argue, as he essentially did, that his alcoholism did not affect his ability to do his job at Neiman Marcus. Rather, the company unfairly believed that, as an alcoholic, he could not do the job.

However, this theoretical possibility can founder because of the proof requirements when working is the major life activity at issue under the "regarded as" prong. According to the

-15-

precedents, the employee must demonstrate not only that the employer thought that he was impaired in his ability to do the job that he held, but also that the employer regarded him as substantially impaired in "either a class of jobs or a broad range of jobs in various classes as compared with the average person having comparable training, skills, and abilities." Murphy v. United Parcel Service, Inc., 527 U.S. 516, 523 (1999) (quoting 29 C.F.R. § 1630(j)(3)(i)); Bailey, 306 F.3d at 1170 (affirming summary judgment based on the plaintiff's failure to demonstrate that the employer regarded him as "unfit for either a class or a broad range of jobs").

In an answer to an interrogatory, Sullivan claimed that Neiman Marcus either "believed that a person who had previously suffered from alcoholism could not satisfactorily perform his or her job, or . . . it simply was not willing to employ someone who had the stigma of having either suffered from the disease of alcoholism or who had the stigma or having been treated in an alcohol rehabilitation/detoxification facility for alcoholism." When he was pressed to explain how he knew that Neiman Marcus thought that alcoholics could not satisfactorily perform their jobs, he said it was "[b]ecause of the actions they took [against him]."

We rejected a similar argument in Bailey, where we observed that "[a] plaintiff claiming that he is 'regarded' as

-16-

disabled cannot merely show that his employer perceived him as somehow disabled; rather, he must prove that the employer regarded him as disabled within the meaning of the ADA." Bailey, 306 F.3d at 1169 (emphasis in original). We concluded that nothing in that record, including Bailey's termination, demonstrated that the plaintiff's employer considered him to be "unfit for either a class or a broad range of jobs. . . ." Bailey, 306 F.3d at 1170.

Similarly, Sullivan failed to present any evidence beyond his own termination demonstrating that Neiman Marcus may have believed that he could not perform the essential functions of either a class of jobs or a broad range of jobs in various classes. In both Bailey and this case, the employers were aware of the plaintiff's "problems with alcohol" but claimed that they terminated the plaintiffs for job performance reasons rather than their status as alcoholics. Even if, for purposes of summary judgment, we accept Sullivan's contention that Neiman Marcus terminated him because of their concern that alcoholism impaired his ability to do his job rather than the job misconduct cited by the company, Sullivan has not demonstrated that Neiman Marcus considered him to be limited in his ability to work in a broad range of jobs required by the rigorous standards of the ADA.[4] In

---

[4]The approach to the "regarded as" prong that the Supreme Court took in Murphy has been subjected to a significant amount of academic criticism. See, e.g., Claudia Center & Andrew J. Imparato, Redefining "Disability" Discrimination: A Proposal to Restore Civil Rights Protections for All Workers, 14 Stan. L. &

fact, he did not even mention the broad range of jobs requirement in his brief.  Accordingly, we conclude that Sullivan did not establish that the company regarded him as "disabled" within the meaning of the ADA.

**Affirmed.**

Pol'y Rev. 321, 328 (2003) (claiming that the "class of jobs" approach has made it "virtually impossible" for a claimant to establish a "regarded as" claim); Miranda Oshige McGowan, <u>Reconsidering the Americans with Disabilities Act</u>, 35 Ga. L. Rev. 27, 123 (2000) (claiming that the potential class of employees who could state a valid "regarded as" claim is "vanishingly small" because, <u>inter alia</u>, "[n]o employer evaluates an applicant's fitness to do some other employer's work").  However, the Supreme Court has not altered the <u>Murphy</u> precedent.