**Elizabeth RIVERA–ROCCA, Plaintiff**

v.

**RG MORTGAGE CORPORATION, Defendants.**

Civil No. 06–1570(SEC).

United States District Court, D. Puerto Rico.

Feb. 25, 2008.

Anibal Escanellas–Rivera, Escanellas & Juan, San Juan, PR, for Plaintiff.

Carl E. Schuster, Shiara L. Dilone–Fernandez, Schuster & Aguilo LLP, San Juan, PR, for Defendant.

## OPINION AND ORDER

SALVADOR E. CASELLAS, Senior District Judge.

Before the Court is Defendant RG Mortgage Corporation's (hereinafter Defendant or RG) Motion for Summary Judgment (Docket # 30) and Plaintiff's opposition thereto (Docket # 36). Defendant also moved to strike one of the exhibits filed as support for Plaintiff's aforementioned opposition (Docket # 42), to which Plaintiff opposed (Docket # 49). Defendant further moved to deem as admitted its statement of uncontested facts (*see*, Docket # 43). Plaintiff filed an opposition thereto (Docket # 51). After reviewing the parties' filings, the evidence in the record and the applicable law, Defendant's Motion to

Deem the Facts as Admitted (Docket # 43), and its Motion for Summary Judgment will be **GRANTED.** Its Motion to Strike Plaintiff's Exhibit (Docket # 42) is **FOUND AS MOOT.**

### Standard of Review

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ramírez Rodríguez v. Boehringer Ingelheim,* 425 F.3d 67, 77 (1st Cir.2005). At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." *Maldonado–Denis v. Castillo–Rodríguez,* 23 F.3d 576, 581 (1st Cir.1994).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party' and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" *DePoutot v. Raffaelly,* 424 F.3d 112, 116 (1st Cir.2005) (*quoting, Garside,* 895 F.2d at 48 (1st Cir. 1990)). By like token, 'material' "means

that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." *Rojas–Ithier v. Sociedad Española de Auxilio Mutuo,* 394 F.3d 40, 42–43 (1st Cir.2005) (citations omitted). Therefore, there is a trial-worthy issue when the "evidence is such that there is a factual controversy pertaining to an issue that may affect the outcome of the litigation under the governing law, and the evidence is sufficiently open-ended to permit a rational fact-finder to resolve the issue in favor of either side." *Id.* (citations omitted).

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. *See, Hadfield v. McDonough,* 407 F.3d 11, 15 (1st Cir.2005) (*citing, Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990)). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. *Cadle Co. v. Hayes,* 116 F.3d 957, 960 (1st Cir.1997). Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgement as a matter of law, the 'party opposing summary judgement must present definite, competent evidence to rebut the motion.' *Méndez–Laboy v. Abbott Lab.,* 424 F.3d 35, 37 (1st Cir.2005) (*quoting, Maldonado–Denis v. Castillo–Rodríguez,* 23 F.3d 576, 581 (1st Cir.1994)). "The nonmovant must produce specific facts, in suitable evidentiary form sufficient to limn a trialworthy issue. . . . Failure to do so allows the summary judgment engine to operate at full throttle." *Id.; see also Kelly v. United States,* 924 F.2d 355, 358 (1st Cir.1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medi-*

*na–Muñoz*, 896 F.2d at 8, (*quoting Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve").

### Factual and Procedural Background

Plaintiff in this case is Ms. Elizabeth Rocca (hereinafter Plaintiff or Ms. Rivera). She alleged that RG, her employer, discriminated against her because of her age, disability and reasonable accommodation requests. She also claims that she was retaliated against for requesting reasonable accommodation and filing a complaint.

RG filed the instant motion for summary judgment, which Plaintiff opposed. However, RG asked the Court to deem its Statement of Uncontested Facts (hereinafter SUF) (Docket # 30–2) as admitted because Plaintiff's Opposition thereto ("Plaintiff's Statement of Contested and Uncontested Facts in Support of her Opposition to Defendant's Motion for Summary Judgment", at Docket # 36–2) did not comply with the mandate of Local Rule 56(c).

█ Plaintiff's opposition to RG's Motion for Summary Judgment completely disregarded Local Rule 56's mandate. The first paragraph of Plaintiff's Opposing Statement of Uncontested Facts (POSUF) states "[t]he plaintiff does not oppose the following paragraphs from defendant's statement of facts: 1, 2, 5, 6, 8, 9, 10, 13, 14, 16 and 21." *See*, Docket # 36–2 ¶ 1. However, Defendant's SUF ¶¶ 5, 9–10, which were admitted by the Plaintiff in the very first paragraph to her POSUF, were subsequently denied by Plaintiff. For example, Plaintiff, in paragraphs 15 & 16 appeared to propose some additional facts followed by the following statement: "[d]ue to the aforementioned, ¶ 5 of DSOF is denied." Docket # 36, ¶¶ 15 & 16. Then again, in paragraphs 28–31, Plaintiff, after proposing some facts, stated: "[d]ue to the aforementioned ¶¶ 9–12, 25 of DSOF are denied." *See*, Docket # 36–2, ¶ 28–31. Furthermore, POSUF is silent as to Plaintiff's position with regards to Defendant's proposed facts at SUF ¶¶ 3–4, 7, 11–12, 15, 24 & 26. Plaintiff attempted to create controversy as to Defendant's SUF by simply proposing additional facts mingled together with Plaintiff's opposition to Defendant's SUF, in clear contravention to Local Rule 56's mandate. Also, many of the facts proposed by the Plaintiff, apparently [1] as additional facts, were identical to some of the facts proposed by RG. *See*, Docket # 36–2 ¶¶ 5–8, 22, 27, 29, 33–34, 51 & 58. Finally, key material facts, as the lack of internal complaints regarding the alleged discrimination suffered by the Plaintiff were acknowledged in one paragraph,[2] only to be later contradicted in a different paragraph.[3] This kind of practice made it impossible to the Court to discern Plaintiff's version of the facts.

Local Rule 56(c) provides that

"[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall **admit, deny or**

---

1. We say "apparently" because they were not included in a separate section as mandated by Local Rule 56, nor did they refer to a specific fact included by Defendant in its SUF.

2. *See*, Docket # 36–2 ¶ 8 (stating that Plaintiff "never complained, nor filed any type of discrimination charge, nor an internal discrimi-

nation complaint, because of Robles' actions and omission against her.")

3. *See*, Docket # 36–2 ¶ 15 (stating that Plaintiff "complained about Robles' actions and omissions against her to Mr. Víctor Galán, Jr.").

**qualify** the facts **by reference to each numbered paragraph** of the moving party's statement of material facts and unless a fact is admitted shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain **in a separate section additional facts, set forth in separate numbered paragraphs** and supported by a record citation as required by subsection (e) of this rule." (Our emphasis).

Notwithstanding the clear language of the aforementioned rule, Plaintiff ran afoul of it and filed an opposition in a convoluted way, failing to admit, qualify or deny at least eight facts proposed by Defendant and submitting additional facts that were not included in a separate section as required by the Rule. Furthermore, in some cases, Plaintiff merely re-stated facts already submitted by the Defendant in its SUF. By failing to comply with Local Rule 56, Plaintiff made the Court's ruling in RG's motion for summary judgment a very difficult task. Therefore, the Court will disregard Plaintiff's Opposing Statement of Contested and Uncontested Facts (Docket # 36–2) and will deem Defendant's SUF as admitted.[4] This solution is consistent with Local Rule 56, and First Circuit precedent. *See,* Local Rule 56(e); *see also, Cabán Hernández v. Philip Morris USA, Inc.,* 486 F.3d 1, 8 (1st Cir.2007) ("the district court acted justifiably in rebuffing the appellants' proffered counterstatement and crediting Phillip Morris' version of the facts; [since] the appellants **did not admit, deny or qualify** [its] assertions of fact **paragraph by paragraph** as required by Local Rule 56 ... Instead [submitting] an alternate statement of facts ..."); *Ruiz Rivera v. Riley,* 209 F.3d 24, 28 (1st Cir.2000) (when the parties ignore the Local Rule, they do so at their own peril).

The Court will now narrate the uncontested facts, as supported by the record.

**Uncontested Facts**

Ms. Rivera began working for RG as a Closing Clerk on May 10, 1989. SUF ¶ 1. On or around February 2001, Plaintiff was promoted to the position of Closing Supervisor. She was supervised by Ms. Ritzi Robles (hereinafter "Robles"). SUF ¶ 2. At the beginning of her employment with RG, her relationship with Robles was normal, however, it changed when Plaintiff became a supervisor and Robles became a Manager. SUF ¶ 3. Plaintiff perceived that Robles had an attitude problem towards her, as well as towards other employees; Robles was rude, intransigent and a bad mouth. She yelled at employees and exerted too much pressure on them. Plaintiff believed that Robles had no business ethics. SUF ¶ 4.

On March 2005, Plaintiff complained with Mr. Víctor Galán (hereinafter Galán) and Ms. Marian Pereira, Human Resources Vice President (hereinafter Pereira) about Robles' behavior and attitude, and she asked Pereira to check up on Robles because she believed her attitude was improper. SUF ¶ 5. Around May 25, 2005, Plaintiff requested Robles some time off in order to attend her nephew's high school graduation which was to be held on June 30, 2005. Robles, disrespectfully, suggested that Plaintiff take her nephew to the graduation, attend the ceremony, and then return to work that same day. Plaintiff complained and told Robles that she could not do that, to which Robles replied that she was the boss and would not discuss the matter any further. SUF

---

4. Local Rule 56 allows the Court to deem proposed uncontested facts admitted only if these facts are supported by record citations. Defendant's SUF was properly supported by the record. Because Plaintiff failed to properly controvert these facts, Defendant's SUF is deemed admitted pursuant to Local Rule 56(e).

# 6. Robles' demand that Plaintiff return to work immediately after the graduation, as admitted by the Plaintiff, was due to the fact that June 30th was the last day of the month and, as customary, her work group would be working past midnight. Plaintiff admits that the last day of each month was a very difficult day and everybody was under a lot of pressure to finish all pending matters by that day. SUF ¶ 7.

After the graduation incident, Plaintiff went to the State Insurance Fund (SIF) and alleged that she had psychological problems due to her work, that she was subject to a hostile work environment, and that her supervisor cursed in a loud voice. SUF ¶ 8. On June 22, 2005, Dr. Rinorah Saldaña Camacho (hereinafter Dr. Saldaña), from the SIF, issued a Report of Psychological Evaluation (hereinafter the June 2005 Report) indicating that Plaintiff drove herself to the appointment, that her appearance was appropriate, that Plaintiff took care of her personal hygiene, did house chores and that she could administer her assets. The June 2005 Report also indicated that Plaintiff's memory was good and that her concentration and attention levels were appropriate. SUF ¶ 9. On July 12, 2005, Dr. Liliana Bicchi Consuegra (hereinafter Dr. Bicchi), from the SIF, issued a Special Medical Report regarding Plaintiff's psychiatric condition. According to Dr. Bicchi's report, Plaintiff walked without help, appeared logical, coherent and relevant and her memory was good. SUF ¶ 10. Dr. Bicchi's diagnosis was Panic Disorder. *Id.*

On August 11, 2005, Dr. Rafael H. Miguez (hereinafter Dr. Miguez), issued another Special Medical Report concluding that Plaintiff's emotional condition was not work related, and confirmed Dr. Bicchi's diagnosis of Panic Disorder. SUF ¶ 11. On August 16, 2006, Plaintiff's psychiatrist diagnosed Plaintiff with recurrent moderate major depression, and a panic attack disorder. The doctor indicated that Plaintiff had no limitation of functional capacity, and that she was able to engage in limited stress situations and engage in only limited interpersonal relations. His prognosis was: good with treatment. SUF ¶ 12. On August 17, 2005, Plaintiff was released from the SIF. SUF ¶ 13. On August 30, 2005, Plaintiff's psychiatrist issued a medical certificate indicating that she was receiving psychiatric treatment and needed to rest for seven days. SUF ¶ 14. On September 13, 2005, the SIF issued a decision concluding that Plaintiff's condition of Panic Disorder was not related to her employment. SUF ¶ 15. Plaintiff was on Worker's Compensation leave from May 27, 2005 until August 17, 2005. SUF ¶ 16.

On August 2005, RG, voluntarily, and in order to avoid possible friction between Rivera and Robles, communicated to Plaintiff the opportunity to move to the REO Branch. Said division, which is part of the Closing Department, deals with the closing of repossessed properties. SUF ¶ 17. Plaintiff accepted the change and, on September 12, 2005, she was laterally transferred to the position of Supervisor in the REO Branch. At the REO Branch, Rivera was supervised by Carmen Sonia Meléndez (Meléndez) and continued to enjoy the same salary and benefits. After Plaintiff moved to the REO Branch, she basically continued performing the same duties, only in a different floor. Plaintiff indicated that the REO area was a more relaxed area, and that she felt less pressured there. SUF ¶ 19. On September 26, 2005, Plaintiff filed a discrimination charge with the Puerto Rico Anti–Discrimination Unit ("ADU"), alleging age and disability discrimination. SUF ¶ 21. The only employee who allegedly participated in the discrimination against Plaintiff was Robles. SUF ¶ 26.

On June 23, 2006, Ms. Ismenia Isidor, Director of Servicing (hereinafter Isidor),

communicated to Plaintiff that, due to the Company's overall reorganization, the REO Branch would be eliminated, and thus, effective July 3, 2006, she would be transferred back to the Closing Department of RG as a Supervisor. Isidor explained that she would not report to Robles, in order to make her feel more comfortable and avoid potential friction in light of her previous concerns. SUF ¶ 20. As of today, Plaintiff is still a Supervisor at RG's Closing Department. She is currently supervised by Mr. Luis Cristy, and Plaintiff describes her relationship with Mr. Cristy as excellent. She also stated that she enjoys working with him. SUF ¶ 22. However, Plaintiff has occasional contact with Robles as they work in the same floor, to wit, Robles hands the payroll checks to the employees, and when Mr. Cristy is absent she may give instructions to Plaintiff. SUF ¶ 23. Plaintiff, throughout her employment with RG, never complained about age or disability discrimination, nor did she ever request any type of accommodation. SUF ¶ 24. Plaintiff can sleep, eat, drive, walk, perform house chores and engage in sexual relations. SUF ¶ 25.

### Applicable Law and Analysis

Plaintiff's claims are for discrimination under the American with Disabilities Act of 1990, 42 U.S.C.A. § 12101, et seq. (hereinafter ADA); the Age Discrimination in Employment Act 29 U.S.C.A. § 621–634 (hereinafter ADEA); and various Puerto Rico anti-discrimination laws. She also seeks relief for the alleged retaliation she suffered as a result of her complaint with the ADU and requests for reasonable accommodation. Defendant moves to dismiss Plaintiff's ADA claims on various grounds: (1) that Plaintiff is not a qualified individual with a disability; (2) that Plaintiff has suffered no adverse employment action, (3) that Plaintiff was not re-

placed by a non-disabled person nor was she treated less favorably than a non-disabled employee; (4) that, even if Plaintiff is considered a qualified individual with a disability, Plaintiff was, in fact, provided with the reasonable accommodation requested by her.

On the other hand, RG also alleges that Plaintiff's ADEA claim is without merit because she suffered no adverse employment action. Finally, RG posits that Plaintiff fails to establish a prima facie case of retaliation under either statute, because she suffered no adverse employment actions, these were not sufficiently severe to constitute the retaliatory action prohibited by the discrimination statutes, or they are not causally linked to her protected conduct. We will analyze each argument below.

*ADA claim*

The ADA prohibits "discrimination against an otherwise qualified individual based on his or her disability." *Calero–Cerezo v. United States Department of Justice*, 355 F.3d 6, 19 (1st Cir.2004) (hereinafter *Calero* ). That is, under the ADA an employer may not discriminate against a qualified individual "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Sullivan v. Neiman*, 358 F.3d 110, 114 (1st Cir.2004) (hereinafter *Sullivan* ). It also imposes on employers an affirmative duty to offer reasonable accommodation to an otherwise qualified disabled employee. *Calero*, 355 F.3d at 20. In order to claim protection under the ADA, an individual must first prove that he or she was disabled under the meaning of the ADA. *Id.* Plaintiff can meet the definition of disability under the ADA if she presents proof of any of the following: (1) that she suffered a physical or mental impairment which substantially limited one

or more of her major life activities; (2) that there is a record of such an impairment; or (3) that she was regarded as having such an impairment. *Id.; see also, Sullivan,* 358 F.3d at 114. This determination is based on an *ad hoc* analysis. In making this determination, the Court must answer the following three questions: (1) did the Plaintiff suffer a physical or mental impairment?; (2) did the life activity limited by the impairment qualify as major?; and (3) did the impairment, in fact, substantially limit the Plaintiff's identified major life activity? *Id.* That is, "having an impairment in and on itself is not sufficient to be entitled ADA's protection. It is imperative that the impairment also have a substantial effect on a major life activity." *Sullivan,* 358 F.3d at 115; *see also, Whitlock v. Mac–Gray, Inc.,* 345 F.3d 44, 46 (1st Cir.2003); *Ruíz Rivera v. Pfizer Pharmaceutical LLC,* 463 F.Supp.2d 163, 171 (D.P.R.2006). The burden is on the Plaintiff to establish all three elements. *Calero,* 355 F.3d at 20.

It is undisputed that Plaintiff suffered impairments in the period of time relevant to this case, to wit, a depression and panic disorder. *See,* SUF ¶¶ 9–11. However, Defendant contends that there is no evidence that Plaintiff's impairments limited any major life activity, nor that this limitation was substantial. Let's see.

 A major life activity is one that is of "central importance to daily life." *Sullivan,* 358 F.3d at 115; *see also, Calero,* 355 F.3d at 21. These include, *inter alia,* "basic actions such as seeing, hearing, speaking, breathing, performing manual tasks, lifting, and reaching." *Sullivan,* 358 F.3d at 115; *see also,* 29 C.F.R. Pt. 1630,

App. (2004). Notwithstanding Plaintiff's allegations to the contrary, the record shows that she is able to sleep, eat, drive, do house chores, and have sexual intercourse. She has no reproductive problems according to her doctor. *See,* SUF ¶ 25; *see also,* Docket # 30, Ex. 1b at pp. 155–167; Ex. 5 at 3. Also, Plaintiff's medical records show that she is able to communicate, to concentrate, and to pay attention and follow instructions. Plaintiff's memory was preserved at all levels (immediate, recent, and remote) and was not limited by her conditions. Also Plaintiff had no perceptive limitations and presented good judgment. *See,* Docket # 30, Ex. 5, Plaintiff's Psychological Evaluation by Dr. Saldaña; *see also,* Docket # 30, Ex. 6, Special Medical Report by Dra. Bicchi. The only limitations that appear in the record are that Plaintiff is able to engage only in limited stress situations and engage in only limited interpersonal relations. Docket # 30, Ex. 8, Evaluation by Dr. Hernández. However, Dr. Hernández also concluded that she had no limitations of functional capacity and that she was capable of doing heavy work. Her prognosis was good with treatment. *Id.*

As such, the record before the Court shows that Plaintiff's impairments (depression and panic disorder) did not affect her major life activities. In any event, not every limitation complies with the ADA requirements. The limitation must be substantial and not only temporary, but permanent. *See, Ruiz Rivera,* 463 F.Supp.2d at 171–172. That is, it is Plaintiff's burden to substantiate, not only that her impairments limit her major life activities, but that the limitation is substantial. The record is devoid of any such evidence.[5]

---

**5.** Plaintiff's memorandum of law draw the Court's attention to Plaintiff's allegations to the effect that she cannot engage in any of the aforementioned major life activities. However, the Court does not take into consideration Plaintiff's complaints for two reasons. First,

as stated earlier in this Opinion, the Court will not consider Plaintiff's statement of uncontested facts because she failed to comply with Local Rule 56. Furthermore, Plaintiff's complaints are contrary to the medical evi-

As such, Plaintiff fails to show that she was disabled under the Act. *See, Kelly,* 924 F.2d at 358 (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence.") This, however, does not end our inquiry. Plaintiff's conclusory allegations are not sufficient to survive summary judgment.

■ Plaintiff alleges, that even if the record did not support a conclusion that she was disabled, as defined by the ADA, she still met the "regarded as" prong of the statute. Plaintiff is mistaken. There are two ways in which Plaintiff can demonstrate that her employer regarded her as a disabled, in order to qualify for ADA protection, to wit: (1) that the employer mistakenly believed that she had a physical impairment that substantially limited one or more major life activities, or (2) that the employer mistakenly believed that an actual, non-limiting impairment substantially limited one or more of her major life activities. *Sullivan,* 358 F.3d at 117. The purpose behind this provision is "to avoid situations where an individual is rejected from a job because of the myths, fears and stereotypes associated with disabilities." *Ruiz Rivera,* 463 F.Supp.2d at 176. That is, "an employer runs afoul of ADA when it makes an employment decision based on a physical or mental impairment, real or imagined, that is regarded as substantially limiting a major life activity." *Id.*

■ In support of her contention that she was regarded as disabled by her employer, Plaintiff posits that her initial supervisor, Ritzi Robles, would usually refer to her as the crazy one. Even if the Court was to admit this fact as an uncontested fact,[6] it would still be insufficient to establish that RG regarded her as a disabled individual as defined by the ADA. Plaintiff presents no evidence to show that Robles was a decision-maker. It is well settled law that "stray work-place remarks, as well as statements made either by non-decision makers or by decision makers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or discriminatory animus." *González v. El Día, Inc.,* 304 F.3d 63, 69 (1st Cir.2002). Furthermore, it is uncontested that Robles was rude, intransigent and a bad mouth with everybody. *See, generally,* Docket # 38, Ex. 1A, Plaintiff's Deposition, at pp. 41–51.

On this record, we cannot conclude that Plaintiff met her burden to establish that she was disabled under the meaning of the ADA, or that she was regarded as disabled by RG.

Because Plaintiff failed to establish that she was disabled or regarded as disabled by RG, the Court needs not entertain her claims regarding RG's alleged failure to afford her with reasonable accommodation. *See, Freadman v. Metropolitan Property & Casualty Ins. Co.,* 484 F.3d 91, 103 (1st Cir.2007) (stating that in order to survive summary judgment on a reasonable accommodation claim, the plaintiff must produce enough evidence for a reasonable

dence on the record, and, at times, to Plaintiff's own testimony during her deposition. Plaintiff cannot attempt to create an issue of fact by filing a "sham affidavit", that is, one that contradicts prior deposition testimony. *See, Colburn v. Parker,* 429 F.3d 325, 332 (1st Cir.2005) ("[w]hen an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory without providing a sat-

isfactory explanation of why the testimony is changed."); *see also, Bank of Illinois v. Allied Signal,* 75 F.3d 1162, 1168 (7th Cir.1996); *Jones v. General Motors Corp.,* 939 F.2d 380, 384–85 (6th Cir.1991).

6. As stated above, the Court rejected Plaintiff's statement of facts as non-compliant with the Local Rules, and inconsistent with her deposition testimony.

jury to conclude that: (1) she was disabled within the meaning of the ADA, (2) that she was able to perform the essential functions of the job with or without accommodation, and (3) that defendant, despite knowing of the plaintiff's disability, did not reasonably accommodate it.)

■■■■ However, even if the Court assumed, *arguendo*, that she is disabled under the ADA, Plaintiff's arguments regarding RG's failure to accommodate her disability also lack merit. First, it is uncontested that Plaintiff never requested reasonable accommodation from the Defendant. *See*, SUF ¶ 24. The ADA only imposes liability for an employer's failure "to accommodate **known** physical or mental limitations." *Freadman*, 484 F.3d at 102. As such, an ADA plaintiff must establish that she "sufficiently requested the accommodation in question." *Id.* In this respect, the request must be sufficiently direct and specific and must explain how the accommodation requested is linked to some disability. *Id.* Plaintiff has failed to provide record of any requests for accommodation, or that these requests were linked to her disability. Her reasonable accommodation claim would fail in this front.

Plaintiff's only complaint to RG was that Robles was rude to her, and that she had an attitude problem. Specifically, she told Mrs. Pereira, Human Resources Vice President, that she could not deal with Robles anymore because she was bratty and inconsiderate. *See*, Docket # 38, Ex. 1A, at pp. 63–65. This complaint does not comply with the standard set forth above. However, even if we were to consider said request as a request for reasonable accommodation, after Plaintiff talked to Mrs. Pereira, and after the end of her sick leave, RG offered her a transfer to the REO Branch, and, in Plaintiff's own words, she agreed "because I [would] have nothing to do with [Robles]." Docket # 38, Ex. 1A, Plaintiff's Deposition at p. 72. Therefore, even if we concede that Plaintiff was disabled under the ADA, and that she requested accommodation, the record only shows that her one complaint to RG's Human Resources was that she could no longer deal with Robles, and upon her return, RG granted her with just that. As such, her claim for failure to provide reasonable accommodation under the ADA fails. As such, Plaintiff's ADA claims will be **DISMISSED with prejudice.**

*Retaliation*

■■■■ "The ADA's retaliation provision states that no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." *Freadman*, 484 F.3d at 106. That is, to establish a claim for retaliation, Plaintiff must show that: (1) she engaged in protected conduct, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected conduct and the adverse employment action. *Id.* Because we concluded that Plaintiff never requested reasonable accommodation, her only protected conduct was her discrimination charge with the ADU, which she filed on September 26, 2005. *See*, SUF ¶ 21. In support of her retaliation claim, Plaintiff argues that Robles would call her names, and would say "be careful that (sic) in here people file lawsuits." *See*, Docket # 38, Ex. 1A & B at pp. 44, 82–83, 151, 186. She also alleges that Robles assigned sales quotas to her which were impossible to meet. *See*, Docket # 1 ¶ 12. However, in her deposition Plaintiff admitted that although the quotas were hard to meet, they applied to everybody. Docket # 38, Ex. 1B, at pp. 191–192. Plaintiff also alleged that after she filed the discrimination charge, RG "demoted the Plaintiff and drastically reduced her salary and bonuses." Docket # 1 ¶ 24. However, the rec-

ord shows that she, in fact, received a salary increase. *See*, Docket # 30, Ex. 18. Furthermore, Plaintiff has presented no evidence that she was entitled to a salary increase.

As to Plaintiff's alleged demotion, the record shows that Plaintiff changed positions twice after her problems with Robles began. First, when she returned from sick leave around September 2005, RG offered her a position as a Closing Supervisor (the same position she held before) in the REO Branch, which sells repossessed properties. This change cannot constitute a retaliatory adverse employment action. Plaintiff had requested a change in employment because she could no longer work with Robles. Furthermore, this change, which occurred in August 2005, took place before Plaintiff filed the discrimination charge on September 2005. *See*, SUF ¶¶ 17, 21. As such, there is no causal link between the employment action and the protected conduct. Also, the employment action cannot be said to be adverse, as Plaintiff retained basically the same duties, the same salary and benefits, and was now under the supervision of another person, as requested by her. *See*, SUF ¶ 19.

The second change of which Plaintiff complained was that, after she filed the discrimination charge, RG moved her back to the Closing Department, where Robles worked as a supervisor, taking away the accommodation previously afforded to her. *See*, Docket # 36, p. 8. Although this move constituted an employment action, it was not an **adverse** one. Back in the Closing Department, Plaintiff was to hold the same position she held before being laterally transferred to the REO Branch, that is Supervisor of the Closing Department. *See*, SUF ¶ 20. Furthermore, Plaintiff admitted in her deposition that she was no longer supervised by Robles, and that she gets along with her new supervisor, enjoys working with him, and is happy working there. *See*, Docket # 38, Ex. 1A 80–81. As such, the change cannot be said to be an adverse employment action.

Even is we were to assume that the transfer back to the Closing Department was adverse, a causal link between that change and Plaintiff's complaint with the ADU is missing. Plaintiff's complaint with the ADU was filed on September 2005, and her transfer back to the Closing Department took place on June 23, 2006, that is, nine months after the complaint was filed. It is well settled law, that a large lapse of time between the protected conduct and the adverse employment action militates against a plaintiff alleging retaliation who, as Plaintiff here, does not have direct evidence of discrimination. *See*, *Bennett v. Saint–Gobain Corp.*, 507 F.3d 23, 32 (1st Cir.2007) (noting that a nine-months gap, a year gap or a sixteen months gap were sufficiently large to operate against the plaintiff)(hereinafter *Bennett*); *see also*, *Mesnick v. General Electric Co.*, 950 F.2d 816 (1st Cir.1991) (stating that the fact that plaintiff was fired nine months after the protected conduct suggested a lack of causation between the protected conduct and the adverse employment action). In this same context, Plaintiff also maintains that RG's allegations that her transfer back to the Closing Department was the result of a restructuring of the company were merely pretextual. Under the *McDonnell Douglas* framework, which applies to ADA retaliation claims, Defendant needs only **produce** a non-discriminatory explanation. *Dominguez–Cruz v. Suttle Caribe*, 202 F.3d 424, 430 (1st Cir.2000). If the Defendant meets this burden, as it has in this case, Plaintiff bears the burden to show that the employer's stated reason was pretextual. *Id.* However, mere conclusory allegations

will not suffice. Plaintiff has produced no evidence of the falsity of RG's allegations. As such, her allegations of pretext also fail.

 Plaintiff further argued that Robles retaliated against her by making derogatory comments, calling her names and warning other employees that they should be careful because some employees could file grievance complaints against them, which Plaintiff took as a reference to her complaint. However, in order for an adverse employment action to be actionable for retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge for discrimination." *Carmona–Rivera v. Puerto Rico*, 464 F.3d 14, 20 (1st Cir.2006). That is, "[t]he alleged retaliatory action must be material, producing a significant, not trivial, harm. Trivial actions such as petty slights, minor annoyances, and simple lack of good manners will not normally create such deterrence." *Id.*, at 20. We also note at this point, that Plaintiff's allegations with regards to Robles' comments are merely conclusory, are not supported by the record, and were never brought to RG during Plaintiff's tenure with RG. Her only complaint was that she was rude to her, as she was to others. *See*, SUF ¶ 5 & 24. This claim, in and of itself is not sufficient to meet the severity required for a retaliation action.

As such, Plaintiff's retaliation claim under the ADA lacks merit and will be **DISMISSED with prejudice.**

*ADEA claim*

 Under the ADEA, "an employer is prohibited from taking an adverse employment action against an employee because of the latter's age." *Bennett*, 507 F.3d at 30. To make out a *prima facie* case of discrimination under the ADEA,

Plaintiff needed to prove that: (1) she was at least 40 years old; (2) that she met the employer's legitimate job performance expectations; and (3) that she experienced an adverse employment action. *Velázquez–Fernández v. NCE Foods, Inc.*, 476 F.3d 6, 11 (1st Cir.2007). However, we have concluded that RG took no adverse employment action against the Plaintiff. The only action taken by RG, that could arguably be sufficiently material to constitute an adverse employment action, was Plaintiff's transfer to the REO Branch, which was a subdivision of the Closing Department. However, as explained above, Plaintiff had requested as accommodation to be outside of Robles' tutelage, and agreed to the transfer. She cannot argue that said action was discriminatory when it was asked for and agreed to. Furthermore, when transferred to REO Branch, Plaintiff retained the same title, duties and benefits, and the only change was that she would work in a different floor. As such, as explained above, we cannot determine, on this record, that Plaintiff suffered an adverse employment action, and as such, she failed to make out a prima facie case for discrimination under the ADEA. As such, Plaintiff's claims under the ADEA are hereby **DISMISSED with prejudice.**

### Retaliation under the ADEA

 As explained above, there is no evidence in this record to support a finding that RG took any adverse employment action against the Plaintiff following her complaint with the ADU, and, as such, Plaintiff failed to make out a prima facie case of discrimination under the ADEA as well as under the ADA. Therefore, Plaintiff's retaliation claim under the ADEA is also **DISMISSED with prejudice.**

### Pendent State Law Claims

 The remainder of Plaintiff's claims are grounded on Puerto Rico law. Exer-

cising jurisdiction over pendent state law claims once the federal law claims are dismissed is discretional. *See, Newman v. Burgin,* 930 F.2d 955, 963–964 (1st Cir. 1991) (holding that "the power of a federal court to hear and to determine state-law claims in non-diversity cases depends upon the presence of at least one substantial federal claim in the lawsuit ... [and] the district court has considerable authority whether or not to exercise this power, in light of such considerations as judicial economy, convenience, fairness to litigants, and comity"). Because we have dismissed the federal law claims, we will not exercise supplemental jurisdiction over the state law claims. Therefore, Plaintiffs' claims arising from Puerto Rico law are **DISMISSED without prejudice.**

**SO ORDERED.**