# United States Court of Appeals
## For the First Circuit

No. 05-1984

SANDRA I. ORTA-CASTRO; JOSÉ A. NIEVES-ROMERO,
CONJUGAL PARTNERSHIP ORTA-NIEVES,

Plaintiffs, Appellants,

v.

MERCK, SHARP & DOHME QUÍMICA P.R., INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella and Selya, Circuit Judges.

Juan M. Frontera-Suau, with whom Frontera Suau Law Offices was
on brief, for appellants.
Pedro J. Manzano-Yates, with whom Fiddler González &
Rodríguez, PSC was on brief, for appellee.

May 9, 2006

**TORRUELLA**, **Circuit Judge**.  In this appeal, plaintiffs-appellants Sandra I. Orta-Castro ("Orta") and her husband, José A. Nieves-Romero, contest the decision of the district court to grant summary judgment in favor of defendant-appellee Merck, Sharp & Dohme, Química of Puerto Rico, Inc. ("Merck") in an employment discrimination case arising out of Orta's employment at Merck.  In particular, plaintiffs-appellants argue that the district court should not have dismissed their claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., and Puerto Rico law.  After careful consideration, we affirm.

## I.  Background

Orta began her employment with Merck in Caguas, Puerto Rico in December 1992.  A year later, on December 1, 1993, Orta became the Standard Operating Procedures ("SOP") Coordinator at the company and worked in the Quality Operations Department.  As SOP Coordinator, Orta worked with the company's pharmaceutical manufacturing operation. Among her responsibilities, she oversaw the standard operating procedures for the company, served as the custodian of the company's regulations, maintained documents related to the manufacturing process, and worked with Merck's forms system.  Orta was the only employee assigned to the SOP unit.

In 2000, Orta worked under the supervision of Antonio Nieves ("Nieves"), head of the Quality Operations Department.

Quality Operations, in turn, was supervised by Operations Manager Carlos Montoyo ("Montoyo"). Toward the end of 2000, Montoyo suspected that an unannounced audit by the Food and Drug Administration ("FDA") was imminent and was concerned with some deficiencies that he had noticed in the SOP unit. To address the deficiencies and prepare the SOP unit for the FDA audit, Montoyo placed Orta under the supervision of Validation Engineer Rosa M. Lugo ("Lugo") on October 19, 2000. Montoyo's decision was based on his belief that Lugo was good with systems and that she had the necessary skills to analyze the unit's problems and get it in proper working order. Montoyo gave Lugo express instructions to address the deficiencies in the SOP unit to prepare it for the eventuality of an FDA audit.

Orta and Lugo had a prior history at Merck. They had first met back in 1992 when Orta began work at the company. In April 2000, before Lugo became Orta's supervisor, they had an incident related to an FDA visit to the plant. In preparation for the visit, Orta had to update a procedure document in a binder located in Lugo's office. Although Orta inserted the new document in the binder, she failed to remove the old one because it was marked with a "post it," and Orta believed that Lugo was reading it. Lugo told Orta that the document was her (Orta's) responsibility, and that she (Lugo) could not assume responsibility for something that was not part of her job description. Orta felt

-3-

uncomfortable with Lugo's comment and the way she said it with a raised tone. This incident was discussed with Nieves, who met with both Orta and Lugo. Although Orta said that she did not know why Lugo was angry with her, she later stated that Lugo's anger may have been caused by stress associated with the upcoming FDA visit. Orta stated that she did not know of any other reason that Lugo would be mad at her.

A few days before Lugo officially became Orta's supervisor, Lugo asked Orta to produce various documents and information pertaining to the SOP unit. The information that Lugo requested was under Orta's control. The work associated with this request prompted Orta to talk with Montoyo. Orta complained about the work pressure she felt and about the fact that Lugo was constantly changing her requests and not providing any additional time to comply. Orta also told Montoyo that Lugo's requests made her nervous and that she thought Lugo's behavior was related to the binder incident.

As a consequence of the stress she felt, Orta went to visit the infirmary at Merck to receive medical attention. Furthermore, in November 2000, Orta sought medical treatment from a psychiatrist, Dr. Celia Rodríguez-Valdez ("Dr. Rodríguez"), who diagnosed that Orta was suffering a major depression and should be out of work for three months. As a result, Orta was on leave from November 2, 2000 to February 2, 2001. Upon taking this leave, Orta

was advised about benefits such as non-occupational temporary disability insurance and long-term disability.

When Orta returned to work on February 2, 2001, she discovered that her office had been moved from the second floor to the first. Nieves, her former supervisor, told her that she had been moved to the first floor to be closer to Lugo, her supervisor, and because books and other work materials were on the first floor. Orta found her new work area uncomfortable mainly because of the size of her desk. However, the desk was soon changed, and Orta was more comfortable.

On March 2, 2001, Lugo sent Orta an e-mail addressing a series of tasks that she had failed to perform and requesting a meeting to discuss the problem. Orta explained to Lugo at the meeting how, when she returned from her leave, the paperwork had been in disarray, that the person who substituted for her did not do what was required of her, and that she (Orta) had to make up for what had not been done. Before the meeting ended, Orta told Lugo that she needed to go to the infirmary. Lugo accompanied Orta to the infirmary and waited for her until she came out. Lugo and Orta then met with Montoyo. During this meeting, Lugo restated what she had discussed with Orta regarding her responsibilities. Montoyo listened and then asked Orta whether she had anything else to say. At this point, Orta requested a private meeting with Montoyo. During her meeting alone with Montoyo, Orta indicated how nervous

she was. She said that many of Lugo's requirements were related to previous years when she was not present, that the person who had substituted for her had not complied with some requirements, and that she now had to make up for these oversights, in addition to continuing with her daily work. According to Orta, Montoyo promised her that he would help her by speaking with Lugo, told her not to worry, and requested that she work as best she could.

On April 17, 2001, Orta took a second medical leave for major depression upon the advice of her doctor, Dr. Rodríguez. However, sometime between May and July 2001, Dr. Rodríguez moved to the continental United States. As a result, Orta had to find a new doctor, and she began to be treated by Dr. Edgardo Prieto-Agostini ("Dr. Prieto"). On July 30, 2001, Dr. Prieto provided Merck with a certificate stating that Orta was suffering from a severe depressive condition that prevented her at that time from doing work and recommending that Orta's medical leave be extended until December 31, 2001. This recommendation was accepted, and Orta's leave was extended.

Nevertheless, on November 1, 2001, Orta received a call from Merck's Human Resources Department informing her of a position available in technical services for which she was qualified. Orta informed the Human Resources official who had called her that she was on medical leave until December 31, 2001 and could not go to

the company for anything.  Orta admitted that she was not bothered by this call.

On December 11, 2001, Dr. Prieto certified to Orta that she could return to work at Merck in January 2002, if the following accommodations were provided: (1) she had to work only four hours a day for the first two weeks; (2) she had to be relocated and be placed outside the supervision of Lugo; and (3) she had to continue visiting her psychiatrist every two weeks.  Orta sent Dr. Prieto's certification along with a letter to Félix Amador, a Merck Plant Manager.

Orta also discussed Dr. Prieto's recommendations with Marilyn Maldonado of the Human Resources Department and signed a document dated January 11, 2002 that was related to her request for accommodation.  The document acknowledged Merck's acceptance of the recommendations made by Dr. Prieto and the actions to be taken by Merck in order to comply with the recommendations.  Specifically, the January 11, 2002 memo acknowledged:

> a) That pursuant to Dr. Prieto's recommendations, Orta would return to work on January 15, 2002, as an Administrative Assistant in the Engineering Department, at the same level and with the same salary rate.
>
> b) That instead of reporting to Lugo, Orta would report to Jesús Martínez, head of the Engineering Department in Caguas; and
>
> c) That Orta would enjoy a four-hour work schedule, from 8:00 a.m. to 12:00 noon, until she returned to her regular eight-hour schedule after January 29, 2002.

To implement the substantive provisions of this accommodation, Orta was assigned to work in a trailer outside the Merck office facilities. She, however, found the trailer dirty, depressing, and isolating. Such a working environment led her to apply for other positions within the company. For example, she applied for a secretarial position in the Quality Control Department. She, however, was denied the position. Orta alleges that she was told by an unidentified Human Resources representative -- she does not recall the person's name -- that she was not given the position because of her absenteeism. However, there may have been another reason for her rejection: if Orta was given the position, she would have had contact with Lugo, who was part of the Quality Control Department, and such a placement would have been contrary to Dr. Prieto's express recommendation.

On May 1, 2002, as a direct consequence of an incident inside the trailer with the person who replaced her in the position of SOP Coordinator, Orta visited Dr. Lillian T. Serrano ("Dr. Serrano"), a psychiatrist. She could not visit her usual psychiatrist, Dr. Prieto, because Merck's medical plan had changed, and it no longer listed Dr. Prieto as an approved medical provider. Dr. Serrano placed Orta on leave as of May 1, 2002, and Orta provided Merck with a certificate from Dr. Serrano to this effect. Despite being under the care of Dr. Serrano at this time, Orta, on May 7, 2002, visited Dr. Prieto at the insistence of her husband.

After examining her, Dr. Prieto put Orta on medical leave until December 31, 2002. This medical leave was later extended until April 30, 2003. Certificates documenting this additional leave were also provided to the company.[1]

As of May 2, 2003, Orta had not returned to her employment with Merck. On May 3, 2003, Orta received a letter dated May 2, 2003 from Abigail Pérez, Merck's Director of Human Resources. The letter stated that because Orta had been absent for a non-occupational illness since May 1, 2002 and because more than the 365 days required by law for her employment to be reserved had elapsed, her employment with Merck was terminated.

On June 3, 2003, Orta and her husband filed an employment discrimination action against Merck. They alleged, inter alia, violations to Orta's rights under the ADA, the FMLA, and Puerto Rico law. After the parties engaged in discovery, Merck filed a motion for summary judgment, which Orta and her husband opposed.

On April 25, 2005, the district court issued its Opinion and Order, in which it granted Merck's summary judgment motion. The court then dismissed the plaintiffs' federal claims with prejudice and their commonwealth law claims without prejudice. Orta and her husband now appeal these rulings.

---

[1] According to Merck's records, Orta was on non-occupational temporary disability leave from May 1, 2002 to May 1, 2003.

## II.  Discussion

### A.  Standard of Review

This Court reviews the district court's grant of summary judgment de novo.  See Vélez-Rivera v. Agosto-Alicea, 437 F.3d 145, 150 (1st Cir. 2006); EEOC v. Unión Independiente de la Autoridad de Acueductos y Alcantarillados, 279 F.3d 49, 55 (1st Cir. 2002).

### B. Sworn Statement Under Penalty of Perjury

Before reaching appellants' federal and Puerto Rico claims, we must address a preliminary issue.  In assessing Merck's summary judgment motion, the district court disregarded Orta's Sworn Statement Under Penalty of Perjury ("Statement"), an affidavit submitted in support of the appellants' opposition to summary judgment.  The court disregarded the Statement because it was in conflict with the answers Orta had given in her deposition and because the appellants had failed to provide "a satisfactory explanation for the subsequent change in her testimony."  For two reasons, the appellants now argue that the district court erred in disregarding Orta's Statement.  First, they claim that the court failed specifically to enumerate the contradictions in her testimony.  Second, they contend that Orta provided a "wholly satisfactory" explanation for the change in testimony.

This Court "review[s] the district court's decision as to 'the evidentiary materials it will consider in deciding a motion for summary judgment' only for 'a clear abuse of discretion.'"

-10-

Lennon v. Rubin, 166 F.3d 6, 8 (1st Cir. 1999) (quoting EEOC v. Green, 76 F.3d 19, 24 (1st Cir. 1996)).

With regard to the appellants' first ground for error, we can find no authority whatsoever for the proposition that a district court must specifically enumerate the contradictions that lead it to disregard a given piece of evidence. Orta's second asserted ground is similarly baseless. The appellants claim that they provided a satisfactory explanation for the change in Orta's testimony -- namely, the fact that Orta was having trouble with her memory, and after reviewing certain documents she was able to recall events that she did not recall during her deposition. We, however, do not find this explanation to be satisfactory. Rather, we believe that the district court was warranted in finding the explanation to be an attempt to manufacture an issue of fact in order to survive summary judgment. See Colantuoni v. Alfred Calcagni & Sons, 44 F.3d 1, 4-5 (1st Cir. 1994) ("When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed.").

Several factors lead us to this conclusion. First, the Statement was executed only after Merck had filed its motion for summary judgment, thus suggesting that the Statement was made solely to create an issue of fact for the purpose of surviving

-11-

summary judgment.[2]  In both <u>Colantuoni</u>, 44 F.3d at 5, and <u>Torres</u> v. <u>E.I. Dupont de Nemours & Co.</u>, 219 F.3d 13, 20 (1st Cir. 2000), we found such a chronology to be probative of the fact that the non-movant was merely attempting to create an issue of fact.  Second, Orta's deposition was taken on two different occasions.  The first session was on January 28, 2004 and the second session on April 7, 2004.  At both sessions, she was accompanied by her attorneys.  At no point did they suggest that she was having trouble with her memory.  <u>See</u> <u>Colantuoni</u>, 44 F.3d at 5 (noting that plaintiff's attorney "was present at the deposition, and had the opportunity to clarify any incorrect impressions").  Orta's memory problems seem to have developed only after Merck filed its summary judgment motion.  The district court could well find incredible this sudden, retroactive bout of amnesia.  We therefore accept the district court's conclusion that Orta's proffered explanation was not satisfactory and find here that the district court did not abuse its discretion in disregarding Orta's Statement.

## C.  ADA claims

We now turn our attention to the more substantive arguments made by the appellants.  First, they argue that the district court erred in dismissing their claims under the ADA because there were genuine disputes of material fact that precluded

---

[2]  In fact, the Statement was executed on the same date that Orta filed her opposition to Merck's motion for summary judgment.

summary judgment.  More specifically, the appellants state that three distinct ADA claims were dismissed in error: 1) a discriminatory discharge claim; 2) a disability harassment claim; and 3) a "failure to accommodate" claim.  We address these in turn.

We first look at the discriminatory discharge claim.  For the appellants to establish a prima facie case of disability discrimination under the ADA, they were required to prove:

> a) that Orta was "disabled" within the meaning of the Act;
>
> b) that Orta was able to perform, with or without reasonable accommodation, the essential functions of her job; and
>
> c) that Orta was discharged or adversely affected, in whole or in part, because of her disability.

See Dichner v. Liberty Travel, 141 F.3d 24, 29-30 (1st Cir. 1998). In this case, there is no controversy that the appellants produced sufficient evidence to satisfy the first two elements.  The district court, however, held that the appellants could not establish the third, and final, element -- namely, that Orta was discharged or adversely affected, in whole or in part, because of her disability.  The court found that "the uncontested material facts demonstrate[d] that Merck's decision to terminate Orta from her employment was based on her failure to return from a leave of absence for a non-occupational condition after the three hundred and sixty five (365) days period provided by law ended," and not on her disability.  The court specifically noted that the appellants

did not provide any evidence to establish that Orta's termination was because of her disability.

On appeal, we find the same deficiency. In their brief, the appellants cite only to the information contained in Orta's Statement to demonstrate that Orta was discharged because of her disability. More specifically, they cite to Orta's comment in the Statement that her medical leave commenced on May 7, 2002 and was to last until May 7, 2003. Such a comment, if accepted, might create a genuine factual controversy as to the reason Orta's employment was terminated. On the one hand, there would be Merck's proffered explanation that Orta was fired because she had failed to return from leave as expected on May 2, 2003. On the other hand, there would be Orta's explanation -- namely, that her leave was supposed to last until May 7, 2003 and that Merck, by ending her employment prior to that date, fired her because of her disability.

As discussed above, however, we agree with the district court's decision to disregard Orta's Statement. In the absence of any other evidence that Merck terminated Orta because of her disability, we are compelled to agree with the district court that Merck's decision to terminate Orta from her employment was based on her failure to return to work by a particular date. The district court correctly found that the appellants had failed to satisfy the third element of their prima facie case. Accordingly, summary

judgment on the appellants' discriminatory discharge claim was proper.

Next, we turn to the appellants' disability harassment claim. On appeal, they argue that Orta was the victim of a hostile working environment as a result of her disability. This claim is easily disposed of, as we can find no evidence that it was raised before the district court. This Court has long held that an issue not raised in the district court cannot be raised for the first time on appeal. See Waterproofing Sys., Inc. v. Hydro-Stop, Inc., 440 F.3d 24, 31 n.2 (1st Cir. 2006); Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 105 n.3 (1st Cir. 2005); Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 257 n.6 (1st Cir. 1996).

Finally, we examine the appellants' "failure to accommodate" claim under the ADA. As the district court correctly noted, a "failure to accommodate" claim has a different set of requirements from the "discriminatory discharge" claim. A plaintiff in a "failure to accommodate" case must:

> a) furnish sufficient admissible evidence that she is a qualified individual with a disability within the meaning of the ADA;
>
> b) establish that she worked for an employer covered by the ADA;
>
> c) demonstrate that the employer, despite its knowledge of the employee's limitations, did not accommodate those limitations; and
>
> d) show that the employer's failure to accommodate the known limitations affected the

terms, conditions, or privileges of the
plaintiff's employment.

Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 264 (1st Cir. 1999). Although Merck conceded that the appellants produced enough evidence to meet the first two elements, the district court found that the appellants failed to establish either of the last two elements. The court therefore held that summary judgment was proper on the appellants' "failure to accommodate" claim.

On appeal, the appellants acknowledge the district court's conclusion that Merck had "reasonably accommodated" Orta because the company had, for instance, provided her with a number of medical leaves. They contend, however, that there were many ways in which Merck did not properly accommodate Orta. For example, they assert that the company only complied in "form" and not in "substance" with Dr. Prieto's December 2001 recommendations. We, however, do not find this argument to be persuasive. Dr. Prieto made three specific recommendations: 1) that Orta work for four hours for the first two weeks upon returning from leave; 2) that she have no contact with Lugo; and 3) that she be allowed to be absent one afternoon every two weeks to see Dr. Prieto. From our reading of the record, we believe Merck complied with these recommendations to the letter, whether viewed from the perspective of either "form" or "substance." We fail to see how the factors cited by the appellants -- for example, that Orta was placed in a dirty and depressing trailer, that Orta was not given a job

-16-

description for her new position, and that Orta was not supervised -- are at all relevant to whether Orta was in fact allowed to work only four hours each day upon returning from leave, whether Merck removed Orta from Lugo's supervision, or whether Orta was allowed to be absent an afternoon every two weeks to be able to see her psychiatrist.

The appellants also argue that the district court erred because it failed to consider several reasonable accommodations requested by Orta between February 2001 and March 2002. First, they point to the fact that in February 2001, Orta requested the relocation of her office from the first to the second floor. Even if this is true, we do not see how such an accommodation is related to Orta's claimed disability. See Estades-Negroni v. Assocs. Corp. of N. Am., 377 F.3d 58, 64 (1st Cir. 2004) (noting that "under the ADA, requests for accommodation must be . . . linked to a disability"). Second, the appellants cite to a number of instances in which Orta purportedly requested to be removed either from Lugo's supervision or the trailer that she found depressing. Under the ADA, requests for accommodation must be express, see id., and we can find no evidence that Orta explicitly made either of these requests. The district court came to the same conclusion, noting that Orta only made two requests: 1) a written request to have Merck implement Dr. Prieto's recommendations; and 2) a verbal request to have her desk changed because it was uncomfortable. See

-17-

<u>Reed</u> v. <u>LePage Bakeries, Inc.</u>, 244 F.3d 254, 261 (1st Cir. 2001) ("[T]he ADA's reasonable accommodation requirement usually does not apply unless 'triggered by a request' . . . .") (quoting Henry Perrett, Jr., 1 <u>Americans With Disabilities Act Handbook</u> § 4.17, at 121 (3d ed. 1997)). Third, the appellants point to how Orta's request to be transferred to a secretarial position was denied. The district court, however, fully considered this request for accommodation and concluded that Merck was fully within its rights to deny Orta the position, since "in that position Orta would have had contact with Lugo, in contravention of Dr. Prieto's very specific recommendation that she not have any contact with her former supervisor."

Finally, the appellants argue that Merck failed to properly accommodate Orta because the company terminated her employment while she was on medical leave. There is, however, no evidence that Orta was terminated while she was on leave. The only proof offered by the appellants demonstrating that Orta was on leave on May 2, 2003, the date of her termination, was Orta's Statement, which we (and the district court) have disregarded. There is ample evidence, however, to support the proposition that by May 2, 2003, Orta's one-year leave had elapsed. For example, there are the sworn statements of Merck employees Giselle Olmo and Abigail Pérez, which state unequivocally that Orta's leave was to end on May 1, 2003. Even more important is the district court's

-18-

finding that Orta herself had submitted a certificate from her doctor stating that she was on leave beginning May 1, 2002. This demonstrates to us that Orta's one-year leave had indeed elapsed by May 2, 2003 and that Merck, in releasing Orta on that date, did not terminate her while she was on medical leave. Therefore, the district court was correct in granting summary judgment on the appellants' "failure to accommodate" claim.

## D. FMLA claim

The appellants' next argument is that the district court erred in granting summary judgment on their FMLA claim. More specifically, they take issue with the district court's resolution of their claim that Orta was discriminated and retaliated against under the FMLA because she was denied the position of secretary in the Quality Control department due to her absences under the FMLA. The district court found that the appellants had not proffered any significantly probative evidence to sustain their allegation that Orta was denied the position because of her absences.

We agree with the district court. As the court correctly stated, to establish their retaliation claim, the appellants were required to establish their prima facie case by showing that 1) Orta had availed herself of a protected right under the FMLA; 2) Orta was adversely affected by an employment decision; and 3) there was a causal connection between the protected conduct and the adverse employment action. Hodgens v. Gen. Dynamics Corp., 144

-19-

F.3d 151, 161 (1st Cir. 1998). Only the third prong of this test is at issue in this appeal.

In the parties' briefs, there is some dispute about the precise date that Orta applied for the position of secretary in the Quality Control department. Merck claims that Orta only applied for the position in January 2002, after Dr. Prieto had made his December 2001 recommendation that Orta should be placed outside Lugo's supervision. The company argues that Orta was not named to the secretarial position because, as noted above, in that position she would have had contact with Lugo, who at the time was a supervisor in the Quality Control department. The appellants, however, contend that Orta applied for the position not in January 2002, but in March 2001. They point out that, at that time, Lugo was not a supervisor in the Quality Control department. Therefore, there would have been no medically-related reason for not placing Orta in the secretarial position. They allege that the real reason that Orta was denied the job was the earlier medical leaves she had taken under the FMLA. They came to this conclusion after an unidentified Human Resources representative (they do not recall the name of the person) told Orta that she was not given the position because of her absenteeism.

We find it unnecessary to resolve this dispute about the date of Orta's application for the secretarial position, because even assuming that the appellants are correct and that Orta had

applied for the secretarial position in March 2001, we would still come to the conclusion that the appellants' FMLA retaliation claim fails. Simply put, the appellants offer no proof that Orta's absences were taken into account in denying her the secretarial position. The only evidence they offer to support their claim is the comment by the unidentified Human Resources representative who told Orta that she was not given the position because of her absenteeism. It is unclear, however, whether this statement was made by someone with authority to make such a statement on behalf of the company, in which case it could be admissible as an admission of a party-opponent under Fed. R. Evid. 801(d)(2). As there is no evidence in the record that the unknown employee had such authority in this case, the evidence is inadmissible hearsay.

Accordingly, the appellants offer no significantly probative evidence to show that there was in fact a causal connection between Orta's FMLA leave and Merck's decision to deny her the position of secretary in the Quality Control department. We therefore find that the district court was correct in dismissing the appellants' claim under the FMLA.

**E. Puerto Rico claims**

The appellants' final argument relates to their state law claims. Since the district court dismissed all of the appellants' federal causes of action, the court exercised its discretion under 28 U.S.C. § 1367(c)(3) and declined to exercise supplemental

-21-

jurisdiction over the appellants' state law claims. The court dismissed all of the appellants' state law claims without prejudice so that the appellants would be able, if they wished, to refile the state claims in state court. On appeal, the appellants were hoping that we would reverse the district court's decision to grant summary judgment on the federal claims and then require the district court to exercise its supplemental jurisdiction and reinstate the state law claims, thereby allowing for the efficient use of judicial resources.

Since we have found that the district court properly dismissed the appellants' federal claims, we decline the appellants' invitation to compel the district court to exercise its supplemental jurisdiction. See 28 U.S.C. § 1367(c)(3) (providing that federal district courts, in their discretion, may "decline to exercise supplemental jurisdiction over a claim under subsection (a)," e.g., a state law claim, if the court "has dismissed all claims over which it has original jurisdiction").

### III. Conclusion

For the reasons expressed herein, the decision of the district court granting summary judgment on behalf of Merck is affirmed.

**Affirmed**.