# United States Court of Appeals
## For the First Circuit

Nos. 15-1259
    15-1404

CARLOS ESCRIBANO-REYES,

Plaintiff, Appellant,

v.

PROFESSIONAL HEPA CERTIFICATE CORP.,

Defendant, Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, Jr., U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Lynch, Circuit Judges.

Aníbal Escanellas-Rivera, with whom Escanellas & Juan, P.S.C. was on brief, for appellant.
José L. Nieto-Mingo, with whom Ricardo Pizarro García and Pizarro García Law Offices, LLC were on brief, for appellee.

March 30, 2016

**LYNCH**, **Circuit Judge**.    Carlos Escribano-Reyes's ("Escribano") discrimination and retaliation suit against his employer, Professional HEPA Certificate Corp. ("HEPA"), ended in summary judgment for HEPA and a sanction order against Escribano's counsel for filing a "sham affidavit" after he received repeated warnings in earlier cases not to do so.

As to the summary judgment order, Escribano first argues that the district court erred in striking, under the sham affidavit doctrine, a post-discovery sworn statement that Escribano had submitted in his opposition to HEPA's motion for summary judgment. Second, he argues that the district court erred in granting summary judgment to HEPA on the basis that he did not meet his burden of showing that HEPA had enough employees to qualify as a covered employer under either the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, or the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634.  Even though the nature of the evidence he provided -- a list of names of twenty-seven individuals who he believed were employees of HEPA -- was competent, we agree with the district court that it was insufficient to meet his burden on summary judgment, where the defendant had submitted official documents filed with the Puerto Rico Department of Labor showing that it did not employ enough people to trigger the ADA or the ADEA.

Finally, Escribano challenges the district court's imposition of $1000 in sanctions against Escribano's attorney, Aníbal Escanellas-Rivera, for submitting the stricken affidavit. Finding no error, we affirm.

I.

On September 9, 2013, Escribano brought suit in the United States District Court in Puerto Rico against his employer, HEPA. His amended complaint alleged "illegal harassment, discrimination and retaliation, due to [his] disability, requests for a reasonable accommodation, age, and for his opposition against [HEPA's] unlawful employment practices," in violation of the ADA and the ADEA. He also alleged violations of Puerto Rico law.

On June 24, 2014, about one month after the conclusion of discovery -- on the last day of which Escribano's deposition had been taken -- HEPA filed a motion for summary judgment. HEPA argued that it did not employ the minimum number of employees necessary to qualify as an "employer" under either the ADA or the ADEA. See 42 U.S.C. § 12111(5)(A) ("employer" for purposes of ADA requires "15 or more employees"); 29 U.S.C. § 630(b) ("employer" for purposes of ADEA requires "twenty or more employees"). In support, HEPA submitted "Quarterly Report[s] of Wages Paid to Each Employee" for the years 2012 and 2013 that had been filed with the Puerto Rico Department of Labor and Human Resources, as well as "Informative Return Statements" for the years 2012 and 2013, to

show that HEPA had fewer than fifteen employees between 2012 and 2013.

Escribano filed a memorandum in opposition to HEPA's motion for summary judgment on August 13, 2014. He argued that HEPA had twenty-seven employees during the years 2011, 2012, 2013, and 2014. To support his argument, Escribano submitted: (1) a handwritten list prepared by Escribano, which had been produced in discovery, that listed the names of twenty-seven people who Escribano believed were employees of HEPA, and (2) a sworn statement dated August 12, 2014, in which he stated that "[he] [was] fully aware of the fact that the defendant had 27 employees during the years in which the adverse employment actions were taken against [him], since [he] worked on a daily basis, along with the employees that appear in the list."

HEPA filed a reply to Escribano's memorandum on September 3, 2014, arguing that Escribano's allegations with regard to the number of HEPA employees were insufficient to defeat a motion for summary judgment and requesting that the district court strike Escribano's sworn statement in its entirety. HEPA stated that Escribano's "sworn statement consists of several new allegations never before mentioned, testimony that contradicts [Escribano's] testimony during his deposition, that is based on hearsay and/or that constitute a conclusory allegation and/or a reinstatement of [Escribano's] allegations of the Amended

- 4 -

Complaint unsupported by a single piece of evidence or reference to the record." In short, HEPA alleged that Escribano, "confronted with the fact that there is no evidence to support his allegations, prepared a custom-made, self-serving statement . . . to face the ambiguities and gaps of his factual and legal theories."

The district court granted HEPA's motion for summary judgment and its motion to strike Escribano's sworn statement on January 23, 2015. Reyes v. Prof'l HEPA Certificate Corp., 74 F. Supp. 3d 489 (D.P.R. 2015). Invoking the sham affidavit doctrine and our opinion in Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 35 (1st Cir. 2001), the district court explained that unless a party can provide a "satisfactory explanation" for doing so, "[f]ollowing discovery, a party may not use a later affidavit to contradict facts previously provided to survive summary judgment." Reyes, 74 F. Supp. 3d at 491. The court then noted that Escribano's sworn statement -- signed after HEPA's motion for summary judgment and just one day before Escribano's opposition was filed -- "provides no explanation as to its tardiness, inconsistencies with previous facts and new factual contentions." Id. Lamenting that "this [was] not the first time this court face[d] a sham affidavit issue with [Escribano's] counsel," id. at 492, the district court struck Escribano's sworn statement, held that Escribano's pleadings supported by the stricken evidence would be deemed unsupported, and granted HEPA's motion for summary judgment with

- 5 -

regard to Escribano's ADA and ADEA claims, id. at 493, 495-96. The court also declined to exercise supplemental jurisdiction over Escribano's state law claims and dismissed them without prejudice. Id. at 496; see 28 U.S.C. § 1367(c)(3).

In a separate order dated January 23, 2015, the district court ordered the parties to "show cause as to why [Escribano] or his counsel should or should not be sanctioned pursuant to Fed. R. Civ. P. 11(b) and 28 U.S.C. § 1927." Both parties filed motions in compliance with the order on February 6, 2015. Escribano also filed a notice of appeal from the judgment that same day.

On February 18, 2015, the district court issued an opinion and order imposing on Escribano's counsel, Escanellas-Rivera, a $500 sanction for violation of Rule 11(b) of the Federal Rules of Civil Procedure and a $500 sanction for violations of 28 U.S.C. § 1927. Reyes v. Prof'l HEPA Certificate Corp., 86 F. Supp. 3d 79, 82-83 (D.P.R. 2015). In imposing the sanction for violations of 28 U.S.C. § 1927, the district court judge noted that "[c]ounsel's behavior is not an isolated event" and that he and other judges in the District of Puerto Rico had previously admonished Attorney Escanellas-Rivera for filing post-summary judgment affidavits.[1]   Id. at 83. Escribano filed an amended

---

[1]   The district court cited the following cases as examples of Attorney Escanellas-Rivera's history of filing post-discovery affidavits: Levine-Diaz v. Humana Health Care, 990 F. Supp. 2d 133, 140 (D.P.R. 2014) (disregarding portions of affidavit where

- 6 -

notice of appeal on February 24, 2015, to include an appeal of the district court's order on sanctions.

---

"it was either incongruent with [the plaintiff's] deposition testimony or the matter in question was the subject of extensive questioning during deposition, yet she decided to elaborate further in her affidavit"); Rodriguez-Fonseca v. Baxter Healthcare Corp. of P.R., 899 F. Supp. 2d 141, 148 (D.P.R. 2012) ("Plaintiff's attorney is hereby admonished to never again file a sham affidavit before this Court."); Order at 2, Velazquez-Perez v. Developers Diversified Realty Corp., No. 10-1002 (D.P.R. June 12, 2012), ECF No. 131 (striking post-summary judgment affidavit under sham affidavit doctrine, and noting that "a practice of presenting post summary judgment affidavits . . . simply makes a mockery out of Rule 56"); Rivera v. Empresas Y-Nuina, Inc./Kikuet, No. 10-1574, 2011 WL 3443086, at *3-4 & n.3 (D.P.R. Aug. 8, 2011) (noting the defendant's objection to the plaintiff's submission of a sworn statement, but declining to find that it was a sham affidavit); Melendez-Ortiz v. Wyeth Pharm. Co., 775 F. Supp. 2d 349, 359 (D.P.R. 2011) (adopting magistrate judge's recommendation to disregard portions of affidavit under sham affidavit doctrine); Mojica v. El Conquistador Resort & Golden Door Spa, 714 F. Supp. 2d 241, 252 (D.P.R. 2010) (noting submission of "self-serving affidavit," but declining to find that the affidavit was a sham affidavit); Rivot-Sanchez v. Warner Chilcott Co., 707 F. Supp. 2d 234, 239 & n.1 (D.P.R. 2010) (adopting magistrate judge's recommendation to strike portions of sworn statement under sham affidavit doctrine); Marquez v. Drugs Unlimited, Inc., No. 08-2387, 2010 WL 1133808, at *4-6 (D.P.R. Mar. 22, 2010) (disregarding several statements in a sworn statement under sham affidavit doctrine); Order, Baerga-Castro v. Wyeth Pharm., No. 08-1014 (D.P.R. July 15, 2009), ECF No. 78 (granting motion to strike affidavit); Franco v. Glaxosmithkline, No. 06-1781, 2009 WL 702221, at *7-8 (D.P.R. Mar. 11, 2009) (adopting magistrate judge's report and recommendation, which disregarded several statements in sworn affidavit under sham affidavit doctrine); Rivera-Rocca v. RG Mortg. Corp., 535 F. Supp. 2d 276, 285-86 n.5 (D.P.R. 2008) (disregarding "sham affidavit"). The district court also cited Sánchez-Medina v. Unicco Service, Co., No. 07-1880, 2010 WL 3955792 (D.P.R. May 20, 2010); however, that case did not involve an affidavit submitted by Attorney Escanellas-Rivera, but rather a motion to strike portions of the plaintiff's (Escanellas-Rivera's client) deposition testimony because of inconsistencies, id. at *1-2.

- 7 -

II.

"We review a district court's grant of summary judgment de novo, and review the record in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor." Del Valle-Santana v. Servicios Legales de P.R., Inc., 804 F.3d 127, 129 (1st Cir. 2015). "[W]e review the district court's decision as to 'the evidentiary materials it will consider in deciding a motion for summary judgment' only for 'a clear abuse of discretion.'" Lennon v. Rubin, 166 F.3d 6, 8 (1st Cir. 1999) (quoting EEOC v. Green, 76 F.3d 19, 24 (1st Cir. 1996)).

A.    Escribano's Sworn Statement

Escribano first contends that the district court erred in striking his sworn statement. He argues that "there were no inconsistencies between the [sworn statement] and previous statements from Escribano," and that he provided an adequate explanation for the late filing when he stated that he had to prepare the sworn statement in order to support facts that HEPA's counsel never asked about during Escribano's deposition, "but were raised by HEPA, along with new factual allegations never before raised in [HEPA's motion for summary judgment]."

The district court did not abuse its discretion in striking Escribano's statement. "[W]here a party has given 'clear answers to unambiguous questions' in discovery, that party cannot

'create a conflict and resist summary judgment with an affidavit that is clearly contradictory,' unless there is a 'satisfactory explanation of why the testimony [has] changed.'" Hernandez-Loring v. Universidad Metropolitana, 233 F.3d 49, 54 (1st Cir. 2000) (second alteration in original) (quoting Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994)); see also Torres v. E.I. DuPont de Nemours & Co., 219 F.3d 13, 20 (1st Cir. 2000).

There are a number of inconsistencies between Escribano's deposition testimony and his allegations in the sworn statement.[2] For example, in his sworn statement, Escribano alleged that between March and April 2013, he was subjected to derogatory comments regarding his age from employees David Ayala, Alfredo García, Jeniffer Zayas, and Anabel Pérez. But earlier in his deposition, when defense counsel pressed him on "[w]ho specifically told [him] that [he was] old," he identified only Ayala and García. Defense counsel then asked, "Who else?"; Escribano responded, "That's it." Additionally, in his sworn statement, Escribano claimed that in August 2013, Ayala, García,

---

[2] The district court did not err in declining to enumerate each of the inconsistencies between the sworn statement and deposition. See Orta-Castro v. Merck, Sharp & Dohme Química P.R., Inc., 447 F.3d 105, 110 (1st Cir. 2006) ("[W]e can find no authority whatsoever for the proposition that a district court must specifically enumerate the contradictions that lead it to disregard a given piece of evidence.").

- 9 -

and Pérez "told [him] that they did not want [him] working with them, due to the discrimination charge file[d], and also because [he] was old and sick and was useless due to the requests for reasonable accommodation made."  Though Escribano said that Ayala had made disparaging comments about his age, at no point during his deposition did he allege the particular discriminatory acts cited above; indeed, when asked at the end of his deposition if he could identify any other discriminatory acts against him by Ayala, García, or Pérez, he answered in the negative.  Elsewhere in his sworn statement, Escribano alleged that adverse employment actions were taken against him in 2012.  But in his deposition, Escribano described the alleged discrimination as beginning in 2013.  Additionally, in his sworn statement, Escribano stated -- inconsistently -- that employee Alexander Velázquez was elevated to a position higher than Escribano's in either November 2012 or March 2013.  In his deposition, though, Escribano stated -- also inconsistently -- that Velázquez was promoted above him either in April 2013 or after Escribano filed a discrimination charge in June 2013.

The timing of the sworn statement -- signed one day before Escribano's opposition to HEPA's motion for summary judgment was filed -- also supports the district court's conclusion that Escribano's sworn statement was an inappropriate attempt to manufacture issues of fact and should be stricken.  See Orta-

- 10 -

Castro v. Merck, Sharp & Dohme Química P.R., Inc., 447 F.3d 105, 110 & n.2 (1st Cir. 2006) ("[T]he Statement was executed only after [the defendant] had filed its motion for summary judgment, thus suggesting that the Statement was made solely to create an issue of fact for the purpose of surviving summary judgment," id. at 110.); Torres, 219 F.3d at 20-21 (affirming district court's decision to strike affidavits that were offered after defendants had filed motions for summary judgment); Colantuoni, 44 F.3d at 5 ("[W]e think it significant that the affidavit was offered only after defendants had filed motions for summary judgment. In these circumstances, we are persuaded that plaintiff's affidavit should be disregarded in considering the propriety of summary judgment.").

Escribano presents no satisfactory explanation for the inconsistencies created by his eleventh-hour filing. And the explanation he does offer does not work. He argues that HEPA's counsel did not address certain factual allegations during Escribano's deposition and then raised them for the first time in HEPA's motion for summary judgment, which was itself supported by a different sworn statement, thereby entitling Escribano to "support his opposition to the dispositive motion with a [sworn statement] as for those factual allegations." But this argument, which the district court characterized as a "brother counsel did it first" argument, Reyes, 74 F. Supp. 3d at 493, falls flat

because it does not explain why Escribano's testimony is inconsistent or why he failed to describe certain acts of alleged discrimination in his deposition even though he was given the opportunity. Escribano's insistence that evidence he needed to support his opposition to summary judgment was unavailable because defense counsel never asked about it during Escribano's deposition is meritless; Escribano cannot blame opposing counsel for his failure to marshal the evidence he required.

Under these circumstances, the district court acted within its discretion in striking Escribano's sworn statement.

B.    Grant of Summary Judgment to HEPA

The harder question is whether HEPA was entitled to summary judgment on the issue of coverage. Without reaching the question of whether his later sworn statement is consistent with his deposition on this issue, we consider his sworn statement and conclude that even his best case was insufficient to meet his burden.

As the plaintiff, Escribano bears the burden of proving that HEPA is a covered employer under the ADA and the ADEA. See De Jesús v. LTT Card Servs., Inc., 474 F.3d 16, 18-19 (1st Cir. 2007); cf. Arbaugh v. Y & H Corp., 546 U.S. 500, 516 (2006) (holding that "the threshold number of employees for application of Title VII [of the Civil Rights Act of 1964] is an element of a plaintiff's claim for relief"); Aly v. Mohegan Council, Boy Scouts of Am., 711

F.3d 34, 45 (1st Cir. 2013).[3]  An "employer" for purposes of the ADA is "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year."  42 U.S.C. § 12111(5)(A).  The ADEA's definition uses the same phrasing, except the employer must have "twenty or more employees." 29 U.S.C. § 630(b).

The only evidence regarding the number of employees employed by HEPA that Escribano submitted was an unadorned list of twenty-seven names titled "Lista de Empleados" ("List of Employees").  This list was first submitted as an exhibit during Escribano's deposition, where HEPA's counsel asked Escribano about some of the individuals who appeared on Escribano's list but not in the documents HEPA submitted.  Escribano's answers did little to flesh out his skeletal list.  The only additional information he provided was general job titles for the purported employees (e.g., "Helper" or "Technician assistant") and very rough

_____

[3]    "Since many of the relevant legal standards applicable in employment-discrimination cases arising under the ADEA, the ADA, and Title VII are closely comparable, . . . we cite to them as appropriate."  Gonzalez v. El Dia, Inc., 304 F.3d 63, 68 n.4 (1st Cir. 2002) (citing Dichner v. Liberty Travel, 141 F.3d 24, 30 n.5 (1st Cir. 1998)); see also Serapion v. Martinez, 119 F.3d 982, 985 (1st Cir. 1997) (construing the definition of "employee" for purposes of Title VII and noting that "[w]e regard Title VII, ADEA, ERISA, and FLSA as standing in pari passu and endorse the practice of treating judicial precedents interpreting one such statute as instructive in decisions involving another").

estimations of the time periods during which some of them allegedly worked for HEPA. In his sworn statement, he said the basis for his testimony was his personal knowledge, "since [he] worked on a daily basis, along with the employees that appear in the list." Personal knowledge is, of course, a basis on which to ground testimony. See Cadle Co. v. Hayes, 116 F.3d 957, 961 n.5 (1st Cir. 1997). The difficulty for Escribano is that what he submitted is not enough competent evidence to establish that the additional people he identified qualified as employees under the case law.

"[T]he employment relationship is most readily demonstrated by [an] individual's appearance on the employer's payroll." Walters v. Metro. Educ. Enters., Inc., 519 U.S. 202, 206 (1997); see De Jesús, 474 F.3d at 21. Escribano did not provide any payroll evidence beyond the documents that HEPA had already submitted.

Payroll records are not dispositive, though. De Jesús, 474 F.3d at 22. Instead, "the ultimate touchstone . . . is whether an employer has employment relationships with" the requisite number of employees -- fifteen for the ADA and twenty for the ADEA -- "for each working day in 20 or more weeks during the year in question." Walters, 519 U.S. at 212. "A series of Supreme Court decisions have established that when a statute contains the term 'employee' but does not define it, a court must presume that Congress has incorporated traditional agency law principles for

- 14 -

identifying 'master-servant relationships.'" Lopez v. Massachusetts, 588 F.3d 69, 83 (1st Cir. 2009) (citing Clackamas Gastroenterology Assocs., P.C. v. Wells, 538 U.S. 440, 444–47 (2003); Walters, 519 U.S. at 211–12; Nationwide Mut. Ins. v. Darden, 503 U.S. 318, 322–23 (1992); Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 739–40 (1989)); see also Casey v. Dep't of Health & Human Servs., 807 F.3d 395, 404–05 (1st Cir. 2015). In this circuit, we have applied the common-law agency test to decide whether an individual is an employee for purposes of the ADA, see Dykes v. DePuy, Inc., 140 F.3d 31, 38 (1st Cir. 1998), and the ADEA, see Camacho v. P.R. Ports Auth., 369 F.3d 570, 573–74 (1st Cir. 2004); Speen v. Crown Clothing Corp., 102 F.3d 625, 631 (1st Cir. 1996).

In Reid, the Supreme Court summarized the prevailing common-law test for determining whether an individual is an employee.[4] 490 U.S. at 751–52. In Clackamas, the Supreme Court

---

[4] "In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party." Reid, 490 U.S. at 751–52 (footnotes omitted).

"was persuaded that courts should look to the guidelines in the [Equal Employment Opportunity Commission's ("EEOC")] Compliance Manual to address the question of when a person is an 'employee.'"[5] Lopez, 588 F.3d at 85 (citing Clackamas, 538 U.S. at 448–50). The EEOC Compliance Manual states that "[t]he question of whether an employer-employee relationship exists is fact-specific and depends on whether the employer controls the means and manner of the worker's work performance," and identifies a list of sixteen non-exclusive factors for determining whether an employment relationship exists.[6] EEOC Compliance Manual (CCH), § 2-III(A)(1), ¶ 7110, at 5716–17 (2009).

---

[5] The Supreme Court in Clackamas recognized "that the EEOC's guidelines are intended to apply across Title VII, the ADA, and the Age Discrimination in Employment Act." De Jesús, 474 F.3d at 24 (citing Clackamas, 538 U.S. at 449 n.7); see EEOC Compliance Manual (CCH), § 2-I, ¶ 7103, at 5706 (2009).

[6] The sixteen factors are: "[1] The employer has the right to control when, where, and how the worker performs the job. [2] The work does not require a high level of skill or expertise. [3] The employer furnishes the tools, materials, and equipment. [4] The work is performed on the employer's premises. [5] There is a continuing relationship between the worker and the employer. [6] The employer has the right to assign additional projects to the worker. [7] The employer sets the hours of work and the duration of the job. [8] The worker is paid by the hour, week, or month rather than the agreed cost of performing a particular job. [9] The worker does not hire and pay assistants. [10] The work performed by the worker is part of the regular business of the employer. [11] The employer is in business. [12] The worker is not engaged in his/her own distinct occupation or business. [13] The employer provides the worker with benefits such as insurance, leave, or workers' compensation. [14] The worker is considered an employee of the employer for tax purposes (i.e., the employer withholds federal, state, and Social Security taxes). [15] The

Escribano could have created a triable issue as to the number of employees HEPA had by submitting evidence that, "under traditional principles of agency law," Walters, 519 U.S. at 211, the individuals on the list he provided had an employment relationship with HEPA. The sparse evidence he provides -- names, general job titles, and very rough estimates of when those individuals worked for HEPA -- does not come close to satisfying the multifaceted common-law agency test.

"[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). Indeed, a nonmoving party who bears the ultimate burden of proof at trial, like Escribano, must "demonstrate that a trier of fact could reasonably resolve [the] issue in [his] favor." Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010). Without more concrete, specific evidence, a reasonable trier of fact simply could not find that the individuals on Escribano's list that did not appear in HEPA's filings were in an employment relationship with HEPA. Cf. Ost v. W. Suburban Travelers Limousine, Inc., 88 F.3d 435, 439-40 (7th Cir. 1996) (finding that an affidavit from an employee that her

employer can discharge the worker. [16] The worker and the employer believe that they are creating an employer-employee relationship." EEOC Compliance Manual (CCH), § 2-III(A)(1), ¶ 7110, at 5716-17 (2009).

employer had twenty-four employees was "too vague a submission to carry her burden" to prove that her employer was covered by Title VII).

Escribano had ample opportunity during discovery to obtain more evidence about the employees identified on his list or on the topic of the number of employees, yet failed to do so. He cannot now claim that he was unable to secure the evidence he needed to challenge HEPA's motion for summary judgment. Not only did he not do the discovery, but he also did not file a motion under Federal Rule of Civil Procedure 56(d). See Fed. R. Civ. P. 56(d) (providing that if a nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the district court may grant certain forms of relief); Hicks v. Johnson, 755 F.3d 738, 743 (1st Cir. 2014) (noting that "Rule 56(d) allows, in certain circumstances, for supplemental discovery after a motion for summary judgment has been filed").

The evidence Escribano submitted was also insufficient to satisfy the temporal requirement in the definition of "employer," namely that HEPA had fifteen (or twenty) "or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 12111(5)(A); see also 29 U.S.C. § 630(b). In his deposition, Escribano was unable to provide specific time periods during which

the individuals on his list worked.  Rather, he stated that individuals worked, for example, "months," "a month," "about a year ago," and "you could say almost a year."  Indeed, it is not even clear from his answers whether he is referring to the length of time that these individuals worked or how long it had been since they had either started working at or left HEPA.  This lack of specifics and clarity prevents Escribano from carrying his burden.

## C.    Sanctions

Finally, Escribano challenges the imposition of sanctions on his attorney based on the filing of the sworn statement.  The district court imposed sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927.[7]  In imposing these sanctions, the district court placed particular emphasis on Attorney Escanellas-Rivera's long track record of similar tactics, noting that in one case, he was "admonished to never again file a sham affidavit before this Court."  Reyes, 86 F. Supp. 3d at 83 (quoting Rodriguez-Fonseca v. Baxter Healthcare Corp. of P.R., 899 F. Supp. 2d 141, 148 (D.P.R. 2012)).

---

[7]     Federal Rule of Civil Procedure 11(c)(1) authorizes the imposition of sanctions on an attorney who has violated Federal Rule of Civil Procedure 11(b), which governs attorneys' representations to the court.
28 U.S.C. § 1927 provides: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

"We review a district court's imposition of sanctions for abuse of discretion." Jensen v. Phillips Screw Co., 546 F.3d 59, 64 (1st Cir. 2008); see CQ Int'l Co. v. Rochem Int'l, Inc., USA, 659 F.3d 53, 59 (1st Cir. 2011). "This standard is not appellant-friendly, and 'a sanctioned litigant bears a weighty burden in attempting to show that an abuse occurred.'" Jensen, 546 F.3d at 64 (quoting Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003)). Escribano's entire argument opposing sanctions is predicated on his claim that the district court erred in concluding that many of his statements in the sworn statement were a sham. We already rejected that argument above, and Escribano marshals no other defenses. We find no abuse of discretion in the court's order of sanctions.

## III.

For the reasons set forth above, we affirm.